[No. 76822-6.    En Banc.]
Argued February 9, 2006.    Decided June 29, 2006.

THE STATE OF WASHINGTON, *Respondent*, v. BAO SHENG ZHAO, *Petitioner*.

*John Henry Browne* (of *Law Offices of John Henry Browne, P.S.*) and *Rita J. Griffith*, for petitioner.

*Gerald A. Horne, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for respondent.

*Mark A. Larranaga* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

¶1 BRIDGE, J. — Bao Sheng Zhao was originally charged with two counts of first degree child molestation. In order to take advantage of a plea bargain, Zhao pleaded guilty to two counts of conspiracy to commit indecent liberties and one count of second degree assault, even though there was no coconspirator. He now claims that he should be allowed to withdraw his plea because there was no factual basis for the conspiracy charges, and that his plea was not knowing, intelligent, or voluntary. We hold that a defendant may plead guilty to amended charges for which there is no factual basis, so long as there exists a factual basis for the original charges and the defendant's plea to the amended charges is knowing, intelligent, and voluntary. Zhao also claims that his counsel's decision not to interview the victims rendered his plea invalid, but because the issue was not raised at the trial court and the record is insufficient to evaluate this claim, we decline to address it. We affirm the Court of Appeals.

I

Statement of Facts and Procedural History

¶2 Zhao was born and raised in China, and he speaks only Mandarin Chinese. Report of Proceedings (RP) at 9.[1] He came to the United States in May 2002 and began

---

[1] "RP" refers to the November 20 (morning session), November 21, December 10, and December 12, 2003 volume; "RP (Aug. 5, 2003)" refers to the volume covering that day.

working as a cook at a restaurant in Tacoma. In October 2002, Zhao was charged with two counts of child molestation in the first degree based on two separate incidents that occurred in the restaurant's bathroom. Five-year-old K.C. reported that he was molested in the bathroom on August 24, 2002. K.C.'s mother said that she allowed the defendant to keep an eye on K.C. in the bathroom while she paid for the family's meal. Zhao was also accused of molesting six-year-old J.R. on October 16, 2002 while his family was dining in the restaurant.

¶3 K.C. told a child interviewer that the person who had touched him was a black man with tattoos and earrings. But he also told the interviewer that the man did not speak English, and K.C.'s mother later identified Zhao as the cook who had gone into the bathroom with her son. J.R. identified Zhao as his perpetrator.

¶4 The Organization of Chinese Americans (OCA) hired Robert Freeby to represent Zhao. At all times Zhao and Freeby communicated through one of three Mandarin interpreters: Gail Yu and Alice Yeh, both provided by the OCA, and Gigi Ball, a court-provided interpreter. The prosecutor offered to recommend a special sex offender sentence alternative (SSOSA) if Zhao would plead guilty as charged. Zhao rejected this offer. The prosecutor then offered to amend the charges to two counts of conspiracy to commit indecent liberties and one count of second degree assault, with a sentencing recommendation of 68 months. This offer avoided indeterminate sentencing that, at worst, could have resulted in life in prison. Zhao, while not admitting guilt, took advantage of the State's plea bargain and entered an *Alford/Newton* plea of guilty to the amended charges.[2]

---

[2] Under an *Alford* plea, a defendant may take advantage of a plea agreement without acknowledging guilt. *North Carolina v. Alford*, 400 U.S. 25, 36, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). We adopted *Alford* in *State v. Newton*, 87 Wn.2d 363, 372, 552 P.2d 682 (1976).

¶5 On August 4, 2003, the day before the plea, Zhao, Freeby, and Yu reviewed the statement on the plea of guilty. Yu read the statement line-by-line and Freeby frequently interrupted to confirm that Zhao understood. They reviewed the amended charges and their elements, and Freeby explained again that the charges were the result of a compromise. Freeby reviewed every aspect of the plea, including the factual basis for the *Alford/Newton* plea.

¶6 On August 5, 2003, before the plea hearing, Freeby and Zhao reviewed the plea again, this time using Ball as the interpreter. At the hearing, Freeby waived a formal reading of the amended information. Significantly, Freeby stipulated "that the court can rely on the original affidavit of probable cause insofar as it satisfies the elements of the new charges, and of course the court can also rely on the case of *In re [Personal Restraint of] Barr*, [102 Wn.2d 265, 684 P.2d 712 (1984)] for the basis of accepting the amended information as well." RP (Aug. 5, 2003) at 3.[3] During the plea hearing the court asked whether Zhao understood his own statement on the plea of guilty, that he was now charged with two counts of conspiracy to commit indecent liberties by forcible compulsion and one count of assault in the second degree, the maximum and standard range penalties for each charge, that his statement set forth the elements of the charges, that the elements were the things the State would have to prove in a trial, and that the statement set forth the rights that Zhao relinquished with his guilty plea. Zhao affirmed that he understood each of these things. The judge then confirmed that Zhao had reviewed the evidence with Freeby, that he believed there was a substantial likelihood that he would be found guilty, and that having all of that in mind, Zhao wanted to take advantage of the plea bargain offered by the State. Finally, the trial judge confirmed that the plea was not the result of

---

[3] The *Barr* court held that a plea can be voluntary and intelligent absent a factual basis for the ultimate charges, so long as the plea is based on informed review of all the alternatives and the defendant understands the nature of the consequences of the plea. *Barr*, 102 Wn.2d at 268.

threats or promises. Zhao pleaded guilty to each count. The trial court found:

> that there is a factual basis for the plea to this charge *and/or to a more serious charge* based upon the reading of the declaration for determination of probable cause dated October 28th, 2002 . . . . The court finds further that the defendant understands the nature of the charge and the consequences of the plea, and that it is a knowing, voluntary, and intelligent plea, and the court finds all of that as to each of these three counts.

RP (Aug. 5, 2003) (emphasis added).

¶7 On August 7, 2003, Freeby was told by the president of the OCA that Zhao wished to withdraw his plea and obtain new counsel. After conferring with his client, Freeby moved to withdraw. Zhao's new attorney then filed a motion to withdraw the plea. Zhao's new counsel argued that Zhao did not understand the information provided to him at the time he pleaded guilty, and he was not informed of the facts underlying the charges against him. In a declaration, Zhao alleged that Freeby had instructed him to answer "yes" to all of the judge's questions because if he did not, he would be sentenced to life in prison. Clerk's Papers (CP) at 30. Zhao also alleged that Freeby told him he had no option but to plead guilty. *Id.* He claimed he was never informed of the underlying facts, including the fact that one of the victims had described the perpetrator as a black man. Zhao asserted he would not have agreed to the plea bargain had he understood the underlying facts or the consequences.

¶8 The trial judge conducted a two-day hearing on the motion to withdraw, using an entirely new interpreter. At the hearing Zhao's new counsel argued that "despite all of the amazing efforts" on Freeby's part, Zhao did not make a knowing, intelligent, and voluntary plea. RP at 143. He argued that while *Barr* allows a compromise plea so long as there are sufficient facts to support the original charge, after our decisions in *In re Personal Restraint of Hews*, 108 Wn.2d 579, 741 P.2d 983 (1987) (*Hews* II), and *In re Personal Restraint of Thompson*, 141 Wn.2d 712, 10 P.3d

380 (2000), the court must engage the defendant in a colloquy regarding the lack of factual basis for the amended charge in order to have a valid plea.

¶9 At the hearing, Freeby testified on behalf of the State. He explained that at each meeting he and Zhao communicated through an interpreter. Freeby frequently confirmed Zhao's understanding by asking Zhao whether he understood and by making Zhao relate relevant concepts back to him. While there were times when concepts had to be explained more than once, Freeby reported that he and Zhao did not have difficulty communicating through the interpreters.[4] The interpreters read to Zhao the entire discovery (including police reports, a transcript of the interview with K.C., and charging information) verbatim. Freeby and Zhao also discussed in detail K.C.'s identification of the perpetrator as a black male with tattoos and earrings, and this was taken into account when they weighed the strength of the case. Freeby reported talking to Zhao about the possibility of interviewing the child witnesses. He explained to Zhao that the prosecutor's office had a written policy that "if you interview an alleged victim in a sexual misconduct case, that all deals are off and the State is not going to make any kind of recommendation for any kind of SSOSA, if that's a potential resolution in the case." RP at 91. Freeby testified that he had not interviewed the victims because of this policy.

¶10 Freeby testified further that when Zhao questioned the conspiracy charges and asserted that he was not guilty of conspiracy, Freeby explained that the offer was a result of a compromise and that the attorneys wanted to use the amended charges to avoid indeterminate review and achieve a particular sentence. Significantly, Freeby testified that he believed "Zhao could enter a guilty plea to charges

---

[4] Freeby reported getting frustrated with Yeh at one point because she was conversing with Zhao and clearly doing more than verbatim translation. She explained that she was trying to reconcile Zhao's story with the police reports. Freeby reiterated her proper role and ordered her to translate only.

that he technically didn't commit under the premise of pleading to those charges pursuant to a plea bargain," and that "the court had the authority to accept that based on [*Barr*]." *Id.* at 110. Freeby specifically testified that he had explained to Zhao that *he was pleading guilty to charges for which there was no factual basis.* A defense investigator and the translators confirmed Freeby's account of his meetings with Zhao.

¶11 At the hearing Zhao testified that no one ever told him what conspiracy meant, that Yu was unclear in her interpretation, and that she told him to do what his lawyer said. Zhao claimed he did not know there was an amendment to the original charges, he asserted that no one had translated the information or amended information for him orally or in writing, and he claimed that at the time he did not understand that he was also pleading guilty to assault in the second degree. Zhao asserted that he was not told about the maximum and standard range sentences for the charged crimes, and that he did not understand such concepts as the jury trial, constitutional rights, the State's burden of proof, or the *Alford/Newton* plea. Zhao also alleged that he never saw or went over the police reports or the boys' statements.

¶12 But later, Zhao made several statements contradicting his prior testimony and declaration. Zhao admitted that he and Freeby discussed K.C.'s description of the perpetrator as a black male. He also stated that he understood that he was maintaining his innocence at the same time that he was pleading guilty. Moreover, he admitted that his attorney and two interpreters had reviewed his plea statement with him on the day before and on the day of his plea.

¶13 The court denied the motion to withdraw and entered findings of fact and conclusions of law to support its ruling. The trial court found that Zhao's testimony and declaration contained many inconsistencies and that he was neither accurate nor credible, but that Freeby, the investigator, and the translators were credible. The judge

found that Freeby did not have difficulty in communicating with Zhao, that all aspects of the case were reviewed with him, and that Zhao entered into a knowing, intelligent, and voluntary plea. The court also explained that he had in mind the original charges when he found a factual basis for the plea, finding:

> The defendant knew and understood the evidence that . . . could be used to attempt to convict him on the *originally charged offenses*; the defendant knew and understood the elements of the originally charged offenses; the defendant knew and understood that [*sic*] the elements of the amended charges; the defendant *knew and understood that the evidence did not support the amended charges*; and, the defendant knew and understood that the sanctions or consequences of the amended charges were less onerous to him than the sanctions or consequences of the original charges. With all of this in mind, the defendant made an informed, knowing and intelligent choice to enter a plea of guilty to the amended charges. This choice was freely and voluntarily made.

CP at 81 (emphasis added). The trial court concluded that there was no manifest injustice requiring him to allow withdrawal of the guilty plea. He also concluded that while the facts of the case did not match the amended charges, the plea was valid pursuant to *Barr*, 102 Wn.2d 265.

¶14 Zhao appealed, arguing that his plea was not knowing, intelligent, and voluntary, and that he had received ineffective assistance of counsel. In an unpublished opinion, the Court of Appeals found no error in the trial court's findings and concluded that the *Alford/Newton* plea allowed the defendant to refer to the facts underlying the original charges to find a factual basis to support the plea. *State v. Zhao*, noted at 126 Wn. App. 1020, 2005 Wash. App. LEXIS 393, at *18. The Court of Appeals noted that Zhao's ineffective assistance of counsel claim was not raised in any of the proceedings below. *Id.* at *20. In fact, Zhao had not raised the ineffective assistance of counsel claim until his reply brief at the Court of Appeals. Therefore, the court

declined to address the issue and affirmed the trial court's denial of Zhao's motion to withdraw his plea. *Id.*

## II

## Analysis

¶15 Zhao contends that the trial court erred when it did not *expressly* confirm on the record that he understood he was pleading guilty to charges for which there was no factual basis. The State argues that the trial court did not abuse its discretion in denying Zhao's motion to withdraw his plea because the record establishes that Zhao entered a knowing, voluntary, and intelligent plea.

¶16 Superior Court Criminal Rule (CrR) 4.2(f) allows a defendant to withdraw his or her plea "whenever it appears that the withdrawal is necessary to correct a manifest injustice," but this is a demanding standard. CrR 4.2(f); *State v. Marshall*, 144 Wn.2d 266, 280-81, 27 P.3d 192 (2001); *State v. Taylor*, 83 Wn.2d 594, 597, 521 P.2d 699 (1974). Manifest injustice includes instances where "(1) the plea was not ratified by the defendant; (2) the plea was not voluntary; (3) effective counsel was denied; or (4) the plea agreement was not kept." *Marshall*, 144 Wn.2d at 281. Zhao contends that he should be allowed to withdraw his plea because it was not knowing, intelligent, and voluntary. This court will overturn a trial court's denial of a motion to withdraw a plea only for abuse of discretion. *Id.* at 280.[5]

¶17 Zhao entered an *Alford/Newton* plea to the amended charges, which included conspiracy to commit indecent liberties. An *Alford/Newton* plea allows a defendant to plead guilty in order to take advantage of a plea

---

[5] While the Court of Appeals, relying on *Hews* II, required Zhao to show actual prejudice, a close reading of *Hews* II reveals that its actual prejudice requirement arose from its procedural posture as a personal restraint petition case. *See Hews* II, 108 Wn.2d at 581-82. Because this case involves a direct appeal, Zhao instead must show the trial court abused its discretion in concluding there was no manifest injustice justifying withdrawal of the plea.

bargain even if he or she is unable or unwilling to admit guilt. *See State v. Newton*, 87 Wn.2d 363, 372, 552 P.2d 682 (1976) (citing *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)). Even where a defendant does not admit guilt, CrR 4.2(d) requires that the trial court find a factual basis supporting the plea:

> **Voluntariness**. The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

The plain language of CrR 4.2 does not define what constitutes a factual basis for a plea and it does not expressly preclude a trial court from finding sufficient factual basis based on the original charges. Also, "[t]he factual basis requirement of CrR 4.2(d) does not mean the trial court must be convinced beyond a reasonable doubt that defendant is in fact guilty"; there must only be sufficient evidence, from any reliable source, for a jury to find guilt. *Newton*, 87 Wn.2d at 370.

¶18 This court has previously held that a plea agreement cannot exceed the authority of the trial court even if the defendant has agreed to enter the plea, and Zhao seems to argue in part that the trial court exceeded its authority here. *Thompson*, 141 Wn.2d at 723; Suppl. Br. of Pet'r at 11. Thus, we must determine whether a trial court has authority to accept a plea where there is no factual basis for the *ultimate* charges.

¶19 Zhao relies on *Hews* II, 108 Wn.2d at 593-94 and *Thompson*, 141 Wn.2d at 720-21, for the proposition that those cases limited *Barr* by establishing that an accused must understand that his or her conduct satisfies the elements of the charged crime. Such reliance is misplaced. While *Hews* II and *Thompson* contain language that suggests the defendant must understand that his conduct satisfies the elements of the charged crime, in *In re Personal Restraint of Call*, 144 Wn.2d 315, 28 P.3d 709 (2001),

we reasoned that the key to *Thompson* was whether the defendant was fully aware that he was pleading guilty to potentially invalid charges. *Id.* at 325-26. The *Hews* II and *Thompson* courts primarily focused on whether those defendants *knowingly* pleaded guilty to a defective or potentially defective charge. *Hews* II, 108 Wn.2d at 595; *Thompson*, 141 Wn.2d at 724-25.

¶20 In *Barr* the defendant entered into a plea bargain arrangement where Barr agreed to plead guilty to the lesser charge of indecent liberties in order to avoid conviction on two counts of statutory rape. 102 Wn.2d at 266. The *Barr* court held that the plea was valid because Barr was fully aware of the technical infirmity with the amended indecent liberties charge and knew that there was sufficient evidence to support conviction for the original statutory rape charges. *Id.* at 270. Similarly, in *Hews* II where Hews knowingly pleaded guilty to the lesser charge of second degree murder, the *Hews* II court concluded, based on the totality of the circumstances, that Hews understood the nature of second degree murder and that his conduct constituted that crime even though he denied the requisite element of intent. 108 Wn.2d at 595-96. Also consistent is our ruling in *Thompson*, where we concluded that because the defendant pleaded guilty to a crime that occurred before the effective date of the statute creating the offense, his plea was invalid and could not be considered knowing and voluntary because the infirmity was not known to Thompson or the trial court when he entered his guilty plea. *See Thompson*, 141 Wn.2d at 725. Thus, we read *Barr*, *Hews* II, and *Thompson* to stand for the proposition that when pleading to an amended charge for which there is no factual basis, the validity of the plea turns on both the trial judge's and the defendant's understanding of the infirmity in the amended charge. *See Call*, 144 Wn.2d at 326; *Thompson*, 141 Wn.2d at 721.

¶21 This analysis is consistent with the purpose of an *Alford/Newton* plea, in that it allows the defendant to take advantage of a plea offer without having to admit that his

or her conduct satisfies the elements of the charged crime. We do not read *Hews* II and *Thompson* to categorically preclude a defendant from pleading guilty to a lesser related charge for which there is no factual basis. Since the factual basis requirement, both in case law and in this court's rule, is founded on the concept of voluntariness, we hold that a defendant can plead guilty to amended charges for which there is no factual basis, but *only* if the record establishes that the defendant did so knowingly and voluntarily and that there at least exists a factual basis for the original charge, thereby establishing a factual basis for the plea as a whole. Doing so supports a flexible plea bargaining system through which a defendant can choose to plead guilty to a related charge that was not committed, in order to avoid near certain conviction for a greater offense. *See Barr*, 102 Wn.2d at 270 (reasoning that a defendant should be able to determine the course of action that he or she believes is in his or her best interest, so long as the defendant's plea is voluntary and intelligent).[6]

¶22 Zhao further contends that where a defendant pleads to an amended charge for which there is no factual basis, the court must discuss with the defendant on the record the lack of factual basis for the ultimate charge. More specifically, Zhao asserts that voluntariness can be established *only* by conducting a colloquy on the record specific to this question.

¶23 For a plea to be knowing, intelligent, and voluntary, a defendant must have adequate notice and understanding of the elements of the charges against him. *Hews* II, 108 Wn.2d at 590-91. While a specific colloquy on the record

---

[6] Appellate courts in other states have endorsed similar systems. California and New Mexico courts have required that the ultimate charge be reasonably related to the defendant's conduct, meaning that the defendant must plead to the same type of offense as he committed or he must plead to a lesser included offense. *People v. West*, 3 Cal. 3d 595, 477 P.2d 409, 419-20, 91 Cal. Rptr. 385 (1970); *State v. Herrera*, 2001-NMCA-73, 131 N.M. 22, 33 P.3d 22, 26. New Mexico has held that a factual basis for the original charges is sufficient. *Herrera*, 33 P.3d at 26. New York cases allow trial courts to forgo the factual basis requirement altogether where the defendant enters a knowing bargained for guilty plea to a lesser crime. *People v. Tavarez*, 151 A.D.2d 793, 794, 543 N.Y.S.2d 949 (1989); *People v. Du Bray*, 76 A.D.2d 976, 976-77, 429 N.Y.S.2d 76 (1980).

would obviously be preferable, none of the cases cited by Zhao expressly so require. While the *Hews* II court noted that the trial judge discussed the disputed element of intent with the defendant on the record, this discussion was not dispositive of voluntariness, and the court also relied heavily on counsel's testimony as to what he reviewed with his client. *Id.* at 594-95. In fact, the *Hews* II court examined the totality of the circumstances surrounding the plea. *Id.* at 596. And while the procedural posture in *Hews* II and *Thompson* was different in that both of those cases required a showing of actual prejudice, Zhao must at least show manifest injustice to justify withdrawal of his plea. We conclude that it was not manifestly unjust to rely on clear testimony from Zhao's attorney to establish the defendant's understanding.

¶24 Zhao relies on Federal Rules of Criminal Procedure Rule 11(b)(1), to argue that this court should adopt that rule's requirement for an explicit colloquy on the record. Rule 11(b)(1) provides in relevant part:

> Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands . . .
>
> (G) the nature of each charge to which the defendant is pleading.

Zhao argues that we should follow *United States v. Smith*, 60 F.3d 595 (9th Cir. 1995), where the court vacated a plea because the trial judge reviewed the facts supporting the plea on the record but did not read the indictment and did not mention or explain the nature of the charges. *Id.* at 597, 600. While Washington's rule requires the trial judge to determine that the defendant understands the nature of the charges, it does not contain comparable language requiring an inquiry in open court. *See* CrR 4.2(d). Moreover, while the trial judge here did not list the elements of the charged crimes, he did discuss the specific charges and he asked whether Zhao understood the elements. We decline the invitation to follow *Smith*.

¶25 In this case, the trial court specifically found that "the defendant *knew and understood that the evidence did not support the amended charges*," CP at 81 (emphasis added), a finding that Zhao does not explicitly argue we should overrule. The trial court's finding is supported by Freeby's testimony that he discussed the lack of factual basis for the conspiracy charge with Zhao. RP at 98;[7] RP at 120.[8] Moreover, Freeby reviewed Zhao's plea with him line-by-line on two separate occasions with two different interpreters, and the plea set forth the elements of the amended charges. CP at 8. Notification of the elements of the amended charges creates "at the very least, a presumption that the plea was knowing, voluntary and intelligent." *Hews* II, 108 Wn.2d at 596.

¶26 Significantly, the trial judge found Freeby's testimony to be credible and that Zhao's testimony was not credible, a conclusion that is not surprising given the striking inconsistencies in Zhao's declaration and testimony. CP at 78. We defer to the trier of fact on issues of credibility. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). In addition, the trial judge confirmed that Zhao understood his own statement on the plea of guilty, that he was now charged with two counts of conspiracy to commit indecent liberties by forcible compulsion and one count of assault in the second degree, that his statement set forth the elements of the charges, that the elements were the things the State would have to prove in a trial, and that the statement set forth the rights that Zhao relinquished with his guilty plea. RP (Aug. 5, 2003) at 5-7.

¶27 In sum, Zhao has presented no convincing evidence to overcome the presumption that his plea was knowing, intelligent, and voluntary. In light of the strong testimony

---

[7] Freeby testified that "Mr. Zhao made a representation . . . that he wasn't guilty of conspiring to commit indecent liberties by forcible compulsion and assault two. And I explained to Mr. Zhao that this was a plea bargain, this was a compromise; and that what the State was concerned about was the amount of time that they wanted him to serve as a sentence." RP at 98.

[8] When asked whether he had to explain to Mr. Zhao that he was pleading guilty to something that he didn't do, Freeby answered in the affirmative. RP at 120.

from Freeby regarding his efforts in representing Zhao and the trial judge's questions before acceptance of the plea, we conclude that Zhao understood he was pleading guilty to charges for which there was no factual basis. Zhao simply has not shown that the trial court erred when it found no manifest injustice. We hold that in this case the knowing, intelligent, and voluntary character of the plea is amply supported by evidence in the record, even absent a direct colloquy.

¶28 Zhao also claims that his plea was neither voluntary nor intelligently entered because Freeby did not interview the victims.[9] At the hearing on his motion to withdraw, Zhao made no claim that his plea was invalid because Freeby decided not to interview the victims. An appellate court may refuse to review any claim of error not raised at the trial court. While a party may raise a constitutional error for the first time on appeal, the error must be manifest. RAP 2.5(a). Here the record does not reveal sufficient facts for us to evaluate whether the failure to interview the victims resulted in an unintelligent plea, and thus Zhao has failed to establish the actual or practical consequences necessary for us to find that any error was manifest. *See State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).[10]

---

[9] At the Court of Appeals, Zhao framed this argument as one of ineffective assistance of counsel. The Court of Appeals declined to address the question because Zhao did not raise it until in his reply brief. *State v. Zhao*, 2005 Wash. App. LEXIS 393, at *20.

[10] The claimed error in failing to interview witnesses is grounded in a claim that the policy of the Pierce County Prosecutor's Office prevented full investigation of the charges and, thus, Zhao's plea could not have been knowingly and intelligently entered. We have only very limited information about the Pierce County prosecutor's policy and the record does not contain a copy of the policy. Significantly, "[i]f the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest." *McFarland*, 127 Wn.2d at 333; *see also State v. WWJ Corp.*, 138 Wn.2d 595, 603, 980 P.2d 1257 (1999) (reasoning that "[w]ithout a developed record, the claimed error cannot be shown to be manifest, and the error does not satisfy RAP 2.5(a)(3)").

## III

## Conclusion

¶29 We conclude that a defendant may plead guilty to amended charges for which there is no factual basis, so long as there exists a factual basis for the original charges and the defendant's plea to the amended charges is knowing, intelligent, and voluntary. While a colloquy on the record regarding the lack of factual basis would have been preferable, one was not necessary here, where the record established that Zhao was aware that he was pleading guilty to charges for which there was no factual basis in order to receive the benefit of a plea bargain. We affirm the Court of Appeals, concluding that the trial court did not abuse its discretion in refusing to allow the defendant to withdraw his guilty plea.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, OWENS, FAIR-HURST, and J.M. JOHNSON, JJ., concur.

¶30 SANDERS, J. (concurring) — The majority holds a criminal defendant may knowingly plead guilty to a charge lacking a factual basis in order to obtain the benefit of a plea bargain, so long as the facts support the original charge. Majority at 190. I agree. However, I write separately to note the policy of the Pierce County Prosecutor's Office to deny plea bargains to accused sex offenders who interview their alleged victim, as well as defense acquiescence to that policy. *See* Suppl. Br. of Pet'r at 13-18 (discussion addressing said policy); *see also* Suppl. Br. of Resp't at 11-16 (same).

¶31 The United States Constitution and the Washington Constitution both guarantee a criminal defendant the right to counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. To provide constitutionally adequate representation a criminal defendant's counsel " 'must, at a minimum, conduct a reasonable investigation enabling . . . informed decisions about how best to represent [the] client.' " *In re Pers.*

*Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001) (emphasis omitted) (alteration in original) (quoting *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994)). And the prosecution may not interfere with this investigation. *State v. Burri*, 87 Wn.2d 175, 180, 550 P.2d 507 (1976). Interviewing witnesses is an essential part of a reasonable investigation. Defendant's counsel cannot properly evaluate the merits of a plea bargain without fully investigating the facts.

¶32 By conditioning the availability of a plea bargain on a limited investigation, the Pierce County prosecutor infringes the right to counsel. Because "witnesses in a criminal prosecution belong to no one, . . . subject to the witness' right to refuse to be interviewed, both sides have the right to interview witnesses before trial." *United States v. Carrigan*, 804 F.2d 599, 603 (10th Cir. 1986). A witness for the prosecution may refuse to speak to the defense. *Kines v. Butterworth*, 669 F.2d 6, 9 (1st Cir. 1981) (holding witness "may of his own free will refuse to be interviewed by either the prosecution or the defense"). But the prosecution may not discourage interviews. "A prosecutor should not discourage or obstruct communication between prospective witnesses and defense counsel." ABA STANDARDS FOR CRIMINAL JUSTICE: PROSECUTION FUNCTION AND DEFENSE FUNCTION § 3-3.1(d), at 47 (3d ed. 1993). *See also* CrR 4.7(h)(1) (stating prosecutor may not "advise persons other than the defendant having relevant material or information to refrain from discussing the case with opposing counsel"). By discouraging interviews, the Pierce County prosecutor's policy improperly interferes with a defendant's right to investigate the facts.

¶33 Additionally, the prosecution should not use a plea bargain as a coercive tool. *See State v. Hofstetter*, 75 Wn. App. 390, 402, 878 P.2d 474 (1994) (holding "it is improper for a prosecutor to instruct or advise a witness not to speak with defense counsel except when a prosecutor is present" and "a fortiori, that it is improper for a prosecutor to plea bargain in such a way as to impose such instructions or

advice on a witness"). The defense has a right to interview adverse witnesses, and the prosecution may not place coercive conditions on its exercise. As a " 'quasi-judicial officer, representing the People of the state,' " a prosecutor must " 'act impartially in the interest only of justice.' " *State v. Reed*, 102 Wn.2d 140, 147, 684 P.2d 699 (1984) (quoting *State v. Case*, 49 Wn.2d 66, 70-71, 298 P.2d 500 (1956)). Preventing the defense from fully investigating the facts hardly serves the interests of justice. It may be unethical prosecutorial misconduct. And acquiescence by defense counsel may be unethical as well.

## CONCLUSION

¶34 Any policy to deny a possible plea bargain to an accused sex offender simply because defense counsel interviewed the alleged victim strikes at the heart of our justice system. I cannot condone it as appropriate.

CHAMBERS, J., concurs with SANDERS, J.