# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53715-0-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| JACKLYNN CUBA WILSON, | |
| Appellant. | |

MAXA, J. – Jacklynn Wilson appeals her convictions of first degree theft, first degree identity theft, and 10 counts of forgery following her guilty plea. Wilson pleaded guilty to the identity theft charge even though she acknowledged that she did not commit that offense. The guilty plea was part of a plea agreement in which the State agreed to dismiss 22 additional forgery charges, resolve other outstanding cases, and not seek consecutive sentences.

Wilson pleaded guilty to identity theft in accordance with *In re Personal Restraint of Barr*, 102 Wn.2d 265, 684 P.2d 712 (1984). Under *Barr*, a trial court can accept a guilty plea to an amended charge not supported by a factual basis as long as there is a factual basis for the original charge. *Id.* at 270. *Barr* typically applies when the defendant pleads guilty to a lesser offense. Significant here, the identity theft offense to which Wilson pleaded guilty was a *greater* offense than the dismissed forgery charges.

We hold that (1) the trial court did not err in accepting Wilson's guilty plea to the identity theft charge even though it was greater than the dismissed forgery charges because the plea

benefitted her and she understood the consequences of the plea, and (2) Wilson's claims asserted in a statement of additional grounds (SAG) rely on evidence outside the record and therefore cannot be considered. Accordingly, we affirm Wilson's convictions.

FACTS

Wilson worked as a bookkeeper at a company in Tacoma from August 2015 through April 2017. A tax audit prompted an investigation that revealed that Wilson had written and cashed multiple checks totaling over $50,000 from her employer's account without permission. The State charged Wilson with one count of first degree theft and 32 counts of forgery.

In addition to those charges, Wilson had two other criminal cases pending in Pierce County and three cases pending in King County. Wilson and the State initially reached a plea agreement on the three Pierce County cases. The agreement provided that the sentences for those cases would run concurrent to each other and with the King County cases.

At a hearing on the plea agreement, defense counsel informed the trial court that Wilson had decided not to go through with the plea deal. As a result of Wilson's decision, the State revoked the plea agreement and stated its intent to seek consecutive sentences on the three Pierce County cases and on the King County cases. The State also informed Wilson that it would consider adding a free crimes aggravating factor under RCW 9.94A.535(2)(c) and seek an exceptional sentence if the case proceeded to trial.

Wilson later reconsidered and decided to enter into a global plea agreement with the State. The State filed an amended information, charging Wilson with first degree theft, first degree identity theft, and 10 counts of forgery. In exchange for a guilty plea to the amended

2

charges and an agreement to pay restitution to her employer, the State agreed to recommend sentences of 57 months on the theft charge, 84 months on the identity theft charge, and 29 months on each of the forgery charges. The State also agreed to recommend that these sentences run concurrently with the other two Pierce County cases and three outstanding King County cases.

Wilson agreed to plead guilty to the charges in the amended information. In an addendum to a factual admission in the plea agreement addressing the identity theft charge, Wilson wrote:

> In addition to my factual admissions in the plea form, *I recognize that I am entering a plea of guilty to a crime that I in fact did not commit.* My attorney has discussed with me all of the elements of the original charges and the elements of the amended charges, and I understand them all. *There is a factual basis for the original charge.* I understand that the prosecution would be unable to prove the amended charges at trial, but *I see pleading guilty to the amended charge as beneficial to me* because it will allow me to avoid the risk of conviction on the charges I would face at trial. Based upon a review of the alternatives before me, I have decided to plead guilty to a crime I did not commit in order to take advantage of the state's offer. I understand the consequences of this plea agreement and I am making a voluntary and informed choice to enter into it.

Clerk's Papers (CP) at 26 (emphasis added).

At the plea hearing, defense counsel informed the trial court that she had discussed with Wilson the original and amended information, the rights waived by entering a plea, Wilson's offender score, and the sentencing ranges for each of the charges. Defense counsel also stated that she discussed "the collateral consequences of entering pleas of guilt to each of these charges." Report of Proceedings (RP) (June 4, 2019) at 4. Defense counsel stated that she believed that Wilson was entering her plea knowingly, intelligently, and voluntarily.

The trial court engaged in a colloquy with Wilson regarding her guilty plea and encouraged Wilson to interrupt if she did not understand the court's questions or if she needed

3

time to talk with her counsel. The court went through each of the charges and their associated maximum sentence and standard sentence ranges. Wilson told the court that she understood all of the charged crimes, their elements, and the sentence associated with each crime. Wilson also told the court that she did not have any questions about the State's recommended sentence.

Regarding the charge for identity theft, the following colloquy occurred:

THE COURT: [S]o I'm sure [counsel] explained to you, did she not, that *In Re Barr* stands for the proposition that if there's a substantial likelihood you're going to be convicted as originally charged, you can plead guilty to something else, even if everybody in the courtroom agrees that's not what you really did, right, in order to facilitate resolving a criminal case. Do you understand that?

THE DEFENDANT: Yes.
. . . .

THE COURT: . . . So the original charge was forgery, Count 2, and you agree there was a substantial likelihood that you would have been found guilty of that charge had that charge gone to trial?

THE DEFENDANT: Oh, yes.

THE COURT: And the Court has reviewed the Declaration for Determination of Probable Cause and finds that there is a substantial likelihood that she would be found guilty under Count 2, forgery, and therefore under *In Re Barr* can accept a plea to an amended charge. And you understand that whether you admit you committed identity theft in the first degree or not, when you plead guilty to it, it's the same thing; it becomes a conviction on your record, you get sentenced just as if you admitted that that's what you committed? Do you understand that?

THE DEFENDANT: Yeah. I've been fighting this for three months. I got it.

RP (June 4, 2019) at 16-18.

The trial court concluded that Wilson's guilty plea was knowing, voluntary, and intelligent. The court also adopted the State's sentencing recommendation. The court imposed sentences of 57 months for the theft conviction, 84 months on the identity theft conviction, and 29 months on each forgery conviction, all running concurrently. Wilson appeals her convictions.

ANALYSIS

A.    VALIDITY OF GUILTY PLEA

Wilson argues that the trial court erred in accepting her guilty plea on the identity theft charge because the court did not ensure that she understood the nature and consequences of the plea and that the plea was rationally based on the alternatives before her.  We disagree.

1.    Legal Principles

Due process requires that a defendant's guilty plea be knowing, intelligent, and voluntary.  *State v. Robinson*, 172 Wn.2d 783, 794, 263 P.3d 1233 (2011).  The defendant must understand the nature of the charge and the consequences of the plea, including possible sentencing consequences.  *State v. Buckman*, 190 Wn.2d 51, 59, 409 P.3d 193 (2018).  In addition, under CrR 4.2(d), a trial court cannot accept a guilty plea without making a determination that the plea was made "voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea."

CrR 4.2(d) also requires that the trial court find a factual basis for the guilty plea.  However, under *Barr*, a trial court can accept a guilty plea to an amended charge not supported by a factual basis as long as there was a factual basis for the original charge.  102 Wn.2d at 270.  The court stated:

> A plea does not become invalid because an accused chooses to plead to a related lesser charge that was not committed in order to avoid certain conviction for a greater offense.  The choice to plead to such lesser charges is voluntary if it is based on an informed review of all the alternatives before the accused. What must be shown is that the accused understands the nature and consequences of the plea bargain *and has determined the course of action that he believes is in his best interest*.

*Id.* at 269-70 (emphasis added) (citations omitted).

5

In *State v. Zhao*, the Supreme Court elaborated on this rule. 157 Wn.2d 188, 199-200, 137 P.3d 835 (2006). The court stated:

> Since the factual basis requirement, both in case law and in this court's rule, is founded on the concept of voluntariness, we hold that a defendant can plead guilty to amended charges for which there is no factual basis, but *only* if the record establishes that the defendant did so knowingly and voluntarily and that there at least exists a factual basis for the original charge, thereby establishing a factual basis for the plea as a whole. Doing so supports a flexible plea bargaining system through which a defendant can choose to plead guilty to a related charge that was not committed, in order to avoid near certain conviction for a greater offense.

*Id.* at 200.

The court concluded that "a defendant may plead guilty to amended charges for which there is no factual basis, so long as there exists a factual basis for the original charges and the defendant's plea to the amended charges is knowing, intelligent, and voluntary." *Id.* at 204. The court affirmed the trial court's acceptance of a *Barr* plea because the defendant "was aware that he was pleading guilty to charges for which there was no factual basis in order to receive the benefit of a plea bargain." *Id.*

### 2. Pleading Guilty to a Greater Charge

The threshold question is whether a *Barr* allows a defendant to plead guilty to a *greater* offense than the one dismissed as part of the plea bargain. The dissent argues that a *Barr* plea is only available when the defendant pleads guilty to a *lesser* offense. We disagree.

No case has directly addressed this issue. And all the reported cases that address *Barr* pleas appear to have involved a defendant who pleads guilty to a lesser charge in order to avoid a conviction for a greater charge. However, we conclude that a trial court can accept a *Barr* plea in which the defendant pleads guilty to a greater charge.

First, although both *Barr* and *Zhao* referenced pleading guilty to a lesser charge, nothing in the holding or reasoning of those cases *requires* the substitute offense to be a lesser offense

than the one originally charged. And the court in *Zhao* expressed the general rule using broader language, three times stating that a defendant "can plead guilty to *amended* charges for which there is no factual basis." 157 Wn.2d at 190, 200, 204 (emphasis added). The most recent published case discussing the *Barr* and *Zhao* rule also refers to amended charges, not lesser charges. *State v. Robinson*, 8 Wn. App. 2d 629, 635, 439 P.3d 710 (2019).

Second, the court in *Barr* stated that a guilty plea to a charge for which there is no factual basis is valid because the defendant "has determined the course of action that he believes is in his best interest." 102 Wn.2d at 270. This statement suggests that the proper focus for whether to allow a *Barr* plea is on the defendant's belief regarding his or her best interest. The purpose of pleading guilty to an amended charge is to get the benefit of a plea bargain. *See Zhao*, 157 Wn.2d at 204. If the defendant intelligently, knowingly, and voluntarily determines that pleading guilty to a greater offense is in his or her best interest, there is no logical reason to prevent the defendant from entering that guilty plea.

Third, the court in *Zhao* stated that allowing a guilty plea to a charge for which there is no factual basis "supports a flexible plea bargaining system." *Id.* at 200. Allowing a defendant to plead guilty to a greater offense rather than only to a lesser offense provides both the State and the defendant with greater flexibility to fashion a plea bargain that ultimately benefits the defendant.

Fourth, although in a different context, the Supreme Court approved the defendant's guilty plea to a greater charge than the one contained in the information in *State v. Austin*, 105 Wn.2d 511, 517-18, 716 P.2d 875 (1986). In that case, the defendant was charged with attempted violation of the controlled substances act, a gross misdemeanor, but she pleaded guilty to a completed violation of the act, a class C felony. *Id.* at 517. The court stated, "The question

is whether [the defendant] may plead guilty to the greater offense." *Id.* The court concluded that the guilty plea was valid because the defendant clearly understood that she was pleading guilty to a felony rather than a misdemeanor. *Id.* at 517-18.

We conclude that as long as the defendant believes that pleading guilty was in his or her best interest and that the plea was made knowingly, intelligently, and voluntarily, a *Barr* plea is valid even if the defendant pleads guilty to an offense that is greater than the dismissed offense.

3.   *Barr* Analysis

Wilson argues that the trial court did not ensure, and the record does not establish, that her decision to plead guilty to identity theft was made after an informed review of all the alternatives. She bases this argument on the fact that identity theft was a greater charge than the 22 forgery convictions that were dismissed and pleading guilty to that charge exposed her to a greater standard range sentence than if she only had been convicted of theft and forgery. In addition, the reduction of her forgery charges did not affect her offender score. Therefore, Wilson claims that the record does not show that she received any benefit by agreeing to plead guilty to a crime that she did not commit.

However, the record does not support Wilson's claim that her guilty plea did not benefit her. The State informed Wilson after she decided not to accept the first plea deal that it intended to seek consecutive rather than concurrent sentences on her six separate cause cases, as well as a free crimes sentencing aggravator. By pleading guilty to the amended information, Wilson obtained the State's agreement to seek concurrent sentences for those cases and not to ask for a sentencing aggravator. Therefore, by pleading guilty, Wilson avoided the possibility of a significantly longer sentence produced by any number of her sentences running consecutively.

Further, the record shows that the trial court ensured that Wilson's guilty plea was made after an informed review of the alternatives and that she understood the risks and benefits of the plea. The court explicitly identified the maximum sentence and the standard sentence ranges for both identity theft and forgery. The court's statements in addition to the sentence ranges listed for each charge on the signed plea agreement alerted Wilson that identity theft carried a greater sentence than forgery. When asked if she understood the crimes and their associated standard sentence ranges, Wilson answered affirmatively. The court then discussed the nature of the *Barr* plea, and explained to Wilson that her guilty plea would lead to a conviction on her record for a crime that she did not commit in order to facilitate a resolution of the case. Wilson confirmed that she understood.

In addition, Wilson submitted to the trial court a statement that read "Based upon a review of the alternatives before me, I have decided to plead guilty to a crime I did not commit in order to take advantage of the state's offer. I understand the consequences of this plea agreement and I am making a voluntary and informed choice to enter into it." CP at 26.

We hold that the trial court did not err in accepting Wilson's *Barr* plea to identity theft.

B.      SAG CLAIMS

In a SAG, Wilson asserts that she received ineffective assistance of counsel. She claims that defense counsel did not investigate the case in a timely manner and that defense counsel failed to listen to her when she insisted that she did not want to plead guilty to first degree identity theft because she did not commit that crime.

However, when an ineffective assistance claim is raised on appeal, we may consider only facts contained in the record. *State v. Estes*, 188 Wn.2d 450, 467, 395 P.3d 1045 (2017). A personal restraint petition is the proper avenue for addressing arguments based on facts outside

of the record. *Id*. Wilson's assertions rely on facts not contained in the record before this court, including an exhibit that she identifies as defense counsel's explanation of the charges against her. Therefore, we decline to address Wilson's ineffective assistance of counsel claims.

CONCLUSION

We affirm Wilson's convictions.

MAXA, J.

I concur:

SUTTON, A.C.J.

WORSWICK, J. (dissenting) — Today the majority adopts a new rule giving prosecutors unbridled authority to coerce defendants into pleading to offenses greater than any offense the State would be able to prove. For this reason, and because Jacklynn Cuba Wilson's plea was not knowing, intelligent, and voluntary, I respectfully dissent.

Wilson was charged with 1 count of first degree theft (a class B felony) and 32 counts of forgery (class C felonies). After Wilson rejected a plea offer, the State threatened to seek consecutive sentences and add a sentencing aggravator. It was only then that Wilson pleaded guilty to first degree theft *and* first degree identity theft (a class B felony), a charge the State would not have been able to prove. The question this court addresses today is whether, under *In re Pers. Restraint of Barr*, 102 Wn.2d 265, 269, 684 P.2d 712 (1984), a trial court has the authority to accept a plea greater than the charged offense, with no factual basis to support it. I would hold it does not.

CrR 4.2(d) forbids a trial court from accepting a plea unless the court is satisfied that there is a factual basis for the plea. "The purpose behind the factual basis requirement is to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge, but without realizing that his conduct does not actually fall within the charge." *State v. Berry*, 129 Wn. App. 59, 65 n.8, 117 P.3d 1162 (2005) (quoting 13 Royce A. Ferguson, Jr., *Washington Practice: Criminal Practice and Procedure* § 3713, at 91-92 (3rd ed. 2004)).

CrR 4.2(d) "is intended to ensure that the constitutional 'voluntary-intelligent' standard is met." *Barr*, 102 Wn.2d at 269 n.2 (quoting *In re Pers. Restraint of Keene*, 95 Wn.2d 203, 206, 622 P.2d 360 (1980)). This court rule embodies the concept that a plea "cannot be truly

voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 1171, 22 L. Ed. 2d 418 (1969).

*In re Personal Restraint of Barr* explains a limited exception to the requirement that a plea be supported by a factual basis to support the charges. 102 Wn.2d at 270. Under *Barr*, a trial court can accept a guilty plea to an amended charge not supported by a factual basis so long as there was a factual basis for the original charge. 102 Wn.2d at 270. But our Supreme Court's language in *Barr* was clear:

> A plea does not become invalid because an accused chooses to plead *to a related lesser charge* that was not committed *in order to avoid certain conviction for a greater offense*. The choice to plead to such lesser charges is voluntary if it is based on an informed review of all the alternatives before the accused.

102 Wn.2d at 269-70 (emphasis added) (citations omitted).

The majority construes *Barr*, and all subsequent cases relying on it, to mean that so long as a plea is "in [the defendant's] best interest" and was knowing, intelligent, and voluntary, a plea to a greater charge is valid. 102 Wn.2d at 269-70. There are three problems with this approach.

First, *Barr* stands for no such rule. The *Barr* court was clearly discussing a plea to a *lesser* charge, finding it valid where the defendant "understands the nature and consequences of the plea bargain and has determined the course of action that *he believes* is in his best interest." 102 Wn.2d at 270 (emphasis added). The majority squeezes meaning from this language that, in my opinion, was never intended.

Second, the majority says this sentence in *Barr* "suggests" that our focus should be on the defendant's best interest. Majority at 7. But a clear reading of *Barr* shows that the *Barr* court was explaining the importance of self-determination, not granting the court oversight into determining what may be in a defendant's best interest. Moreover, the majority gives us no clue

12

as to how an appellate court is to make this factual determination of whether the plea is in the best interest of the defendant. Do we look at the charges alleged and contrast that with the charges pleaded to? Are we to evaluate the plea bargain and the bargaining discussions? Do we consider the strength of the evidence of the crime or possible defense that may not be in the record on appeal? Do we make our determination on the chances a trial court may sentence in accordance with a prosecutor's threats?

Third, as I stated above, our determination of knowing, intelligent, and voluntary, depends in part on whether there is a factual basis for the plea. *Barr* created a limited exception to CrR 4.2(d)'s requirement of a factual basis; it did not eliminate the requirement in favor of an ambiguous "best interest" standard.

Nor does *State v. Austin*, 105 Wn.2d 511, 716 P.2d 875 (1986), support the majority's logic. In *Austin*, which did not involve a *Barr* plea, our Supreme Court upheld a plea where a defendant was charged with a gross misdemeanor, but pleaded to a felony. 105 Wn.2d at 517-18. *Austin* is distinguishable on the facts and has never been used to expand *Barr* beyond its limits.

In *Austin*, the defendant pleaded guilty stating:

> I gave an undercover police officer a prescription that was forged, for Percodan. I did not fill out the prescription, but I did fill out the name on the prescription. I went with him when he went to pass the prescription for the tablets.

105 Wn.2d at 513.

Austin was charged under the general attempt statute, RCW 9A.28.020(3)(d), for a violation of RCW 69.50.403(a)(3). *See Austin*, 105 Wn.2d at 517. Under the general attempt statute, the attempt to commit a class C felony is a gross misdemeanor. However, she pleaded to a violation of RCW 69.50.403(a)(3), which was a class C felony. *Austin*, 105 Wn.2d at 517. As

the *Austin* court pointed out, the count to which she pleaded guilty was not a general attempt crime, but an "attempt to obtain," which was itself a violation of the UCSA, and thus a more severe crime. 105 Wn.2d at 516-17.

The *Austin* court explained that the State's wording in the charging document suggested general attempt was a "technical defect" and the crime was "improperly charged." 105 Wn.2d at 517. And although the *Austin* court does not mention it, the acts Austin agreed she committed *constituted* the class C felony.[1] Wilson admitted no such facts here.

Additionally, the *Austin* court was careful to point out that "either count of [the defendant's] violation carried the same punishment." 105 Wn.2d at 517. The same is not true here. Wilson's sentencing range for forgery was 22-29 months, but her sentencing range for identity theft was 63-84 months. *Austin* does not stand for the general proposition that where there is no mistake in the charging document, and where the punishments are not the same, a plea to a greater offense is valid without a factual basis to support it.

The majority's new rule grants unlimited discretion to prosecutors in violation of CrR 4.2(d). Take, for example, a case where a defendant is charged with multiple counts of assault in the second degree. Under the majority's reasoning, the prosecutor could tell the defendant that if he or she did not plea to a greater offense, the prosecutor would add aggravating factors, enhancements, and a consecutive sentence recommendation, and thereby coerce the defendant

---

[1] The germane element of RCW 69.50.403 was:

> (c) To obtain or attempt to obtain a controlled substance, or procure or attempt to procure the administration of a controlled substance, (i) by fraud, deceit, misrepresentation, or subterfuge; or (ii) by forgery or alteration of a prescription or any written order; or (iii) by the concealment of material fact; or (iv) by the use of a false name or the giving of a false address.

into pleading guilty to first degree assault, first degree manslaughter, or a host of other, greater, unprovable crimes. So long as the colloquy between the court and the defendant showed that the defendant understood the amended charges, the plea bargain, the recommended sentence, and the consequences of the plea, the plea would be valid under the majority's rule. I do not believe this is what our Supreme Court meant in *State v. Zhao*, 157 Wn.2d 188, 200, 137 P.3d 835 (2006), when it endorsed a "flexible plea bargaining system."

Accordingly, because Wilson was coerced into pleading to a greater offense than the State would be able to charge, and because the punishments for those crimes were not the same, I would hold that her plea was neither knowing, intelligent, and voluntary, nor proper under *Barr*. Therefore, I respectfully dissent.

_____
Worswick, J.