[No. 14870-6-II.    Division Two.    August 30, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. HEATH DANIEL STOWE, *Appellant.*

*Sverre O. Staurset; Eric J. Nielsen* of *Legal Office for Quinault Indian Nation,* for appellant.

*John W. Ladenburg, Prosecuting Attorney, Chris Quinn-Brintnall, Senior Appellate Deputy,* and *Barbara Corey-Boulet, Deputy,* for respondent.

SEINFELD, J. — Heath Daniel Stowe entered an *Alford*[1] plea to the charge of second degree assault of his 7-week-old son, Nicholas Stowe. He later moved to withdraw his guilty plea, contending that his counsel advised him incorrectly regarding the consequences of his plea and that he was, thus, denied effective assistance of counsel. The trial court denied the motion. Stowe appeals. We reverse and remand.

---

[1] *North Carolina v. Alford,* 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970); *see also State v. Newton,* 87 Wn.2d 363, 552 P.2d 682 (1976). In an *Alford* or *Newton* plea, the defendant agrees to plead guilty to take advantage of an offer proposed by the State but the guilty plea does not contain an acknowledgment that the defendant committed the act in question. The trial court must determine that the State has sufficient evidence to present a prima facie case — the factual basis for the plea. CrR 4.2(d). This factual basis may come from any reliable source.

According to the Madigan Hospital physicians who examined Nicholas on April 23, 1990, the child suffered from multiple broken ribs, skull fractures with internal bleeding, retinal hemorrhaging, bruises on the head, face and hand, a broken knee and a laceration under the tongue. Nicholas could have sustained these injuries any time between his birth on February 28, 1990, and the date of the examination. However, the medical staff concluded that the injuries were most likely the result of a single shaken baby incident which would explain the severity of Nicholas's injuries. The State maintained that the evidence would establish that Stowe was the perpetrator. Stowe at all times denied any responsibility.

Stowe was 19 years old at the time the State charged him with the second degree assault (RCW 9A.36.021(1)(a)) of Nicholas. He had joined the United States Army when he was 17 and continued to serve until after his conviction. According to Stowe's superior officers and his attorney, the Army was satisfied with his work performance. Stowe, an Eagle Scout, enjoyed the military life style and planned an Army career.

Stowe advised his retained defense attorney that he did not cause Nicholas's injuries and wished to plead not guilty. Stowe made it clear to his attorney that his primary concern was his military career. He wanted to plead not guilty and take the matter to trial in order to clear his name and maintain his career.

In the course of plea negotiations, the State offered Stowe's attorney an agreement whereby the State would recommend that Stowe receive a sentence at the low end of the standard range (3 months) in exchange for Stowe's plea of guilty to second degree assault as charged. The State agreed not to object to Stowe's arguing for work release and community service.

When Stowe's counsel advised his client of the offer several days later, Stowe maintained his innocence and refused to enter into any kind of plea agreement, no matter how attractive, unless he was assured that he could continue his

career in the military. Consequently, Stowe rejected the prosecutor's offer. However, his attorney later told him that if he entered an *Alford* plea, he could probably remain in the Army and that the military would just tack on the jail time to his Army time.

Stowe's attorney, however, had not properly investigated the consequences of an *Alford* plea. He had merely questioned military liaison personnel stationed at the courthouse. The military liaison personnel — military police, not legally trained — opined Stowe would be able to stay in the Army so long as he had a good military record. Counsel passed this information on to his client and Stowe agreed to accept the State's plea offer.

On September 19, 1990, Stowe entered an *Alford* plea to the charge of second degree assault. The trial court reviewed the prosecutor's recommendation (3 months in the county jail and 60 months' community supervision) and advised Stowe that the sentencing judge could disregard the recommendation, sentence him to serve up to 9 months, the high end of the standard range, or impose an exceptional sentence of up to 10 years. Stowe indicated that he understood.

Stowe quickly discovered that his attorney's advice was incorrect. The Army discharged Stowe immediately after entry of his plea. Stowe learned that the Army does not distinguish between *Alford* pleas and any other guilty plea and, thus, Stowe could not avoid discharge by denying he committed the act of assault while simultaneously pleading guilty to the crime of assault.

The trial court then granted the defense several continuances, first to obtain additional psychological evaluations of Stowe and again because Stowe had retained new counsel and planned to move to withdraw his guilty plea. Five months after Stowe entered his guilty plea, the court heard the motion to set aside the guilty plea.

At the hearing, Stowe presented evidence and argued that his counsel was ineffective in failing to interview primary witnesses, failing to obtain a second medical opinion with regard to Nicholas's injuries, neglecting to secure the records

of child abuse of individuals who provided day care for Nicholas, and providing incorrect advice to Stowe regarding the consequences of an *Alford* plea on Stowe's military career. Stowe contended that his plea was contrary to the interests of justice and supported his motion with an affidavit of John C. Galbraith, an experienced criminal defense attorney. Galbraith opined that defense counsel's preplea representation was deficient and "deprived the Defendant of the necessary factual basis to make an intelligent plea." The trial court denied the motion and imposed an exceptional sentence of 60 months' incarceration.

Stowe appeals the trial court's denial of his motion to withdraw his plea, arguing ineffective assistance of counsel invalidated his plea. We agree and reverse the conviction.

■ In reviewing Stowe's claim of ineffective assistance of counsel, we look to whether "(1) defense counsel's performance fell below an objective standard of reasonableness, and (2) whether this deficiency prejudiced the defendant." *State v. James*, 48 Wn. App. 353, 359, 739 P.2d 1161 (1987) (citing *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)); *State v. Thomas*, 109 Wn.2d 222, 743 P.2d 816 (1987). The first prong of the *Strickland* test is satisfied if counsel's performance falls below an objective standard of reasonableness in light of all surrounding circumstances. *Strickland*, 466 U.S. at 688; *Thomas*, 109 Wn.2d at 226.

■ The *Strickland* test applies to claims of ineffective assistance of counsel in the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57, 88 L. Ed. 2d 203, 106 S. Ct. 366 (1985). During plea bargaining, counsel has a duty to assist the defendant "actually and substantially" in determining whether to plead guilty. *State v. Osborne*, 102 Wn.2d 87, 99, 684 P.2d 683 (1984) (quoting *State v. Cameron*, 30 Wn. App. 229, 232, 633 P.2d 901, *review denied*, 96 Wn.2d 1023 (1981)). A guilty plea must be knowing, intelligent, and voluntary in order to satisfy due process requirements. *Henderson v. Morgan*, 426 U.S. 637, 644-45, 49 L. Ed. 2d 108, 96 S. Ct. 2253 (1976); *In re Hews*, 108

Wn.2d 579, 590, 741 P.2d 983 (1987); *In re Montoya*, 109 Wn.2d 270, 277, 744 P.2d 340 (1987). Counsel has an obligation to inform a defendant of all "direct" consequences of a guilty plea. *State v. Barton*, 93 Wn.2d 301, 305, 609 P.2d 1353 (1980). An *Alford* plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970); *In re Montoya, supra* at 280.

Most of Stowe's numerous complaints as to his counsel's performance are not persuasive. Stowe has failed to show that his counsel's failure to seek a second medical opinion would have produced a more viable. defense or that Stowe alerted his counsel with a reason to investigate Nicholas's baby-sitters. However, we are persuaded that Stowe was prejudiced by his counsel's advice regarding the impact of an *Alford* plea on his military career.

The State argues that defense counsel does not have an obligation to inform his client of all possible collateral consequences of a guilty plea. *State v. Malik*, 37 Wn. App. 414, 680 P.2d 770, *review denied,* 102 Wn.2d 1023 (1984). Although this is a correct statement of the law, the question here is not whether counsel failed to inform defendant of collateral consequences, but rather whether counsel's performance fell below the objective standard of reasonableness when he affirmatively misinformed Stowe of the collateral consequences of a guilty plea. As noted by the court in *In re Peters*, 50 Wn. App. 702, 707 n.3, 750 P.2d 643 (1988), "[d]ifferent considerations may arise" when counsel affirmatively misinforms the defendant of the collateral consequences of a guilty plea (citing *United States v. Russell*, 686 F.2d 35 (D.C. Cir. 1982); *People v. Correa*, 108 Ill. 2d 541, 485 N.E.2d 307 (1985) (counsel's erroneous misrepresentation that guilty plea. would not affect defendant's immigrant status was ineffective assistance and rendered guilty plea involuntary)).

Misinformation with respect to the outcome of an *Alford* plea is especially problematic. The Supreme Court recognized

in *Alford* that there are situations in which a defendant "may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." 400 U.S. at 37. When such a defendant learns that his plea will have additional consequences of an unquestionably serious nature and, thus, rapidly changes his calculations about the costs and benefits of standing trial, it may be manifestly unjust to hold the defendant to his earlier bargain. *Russell*, 686 F.2d at 40.

In this case, counsel knew Stowe's primary reason for not wanting to accept the prosecutor's plea bargain was that he wished to continue his military career. Stowe made clear to his attorney that he would rather risk a trial, and a potential lengthy prison sentence, than plead guilty and definitely face discharge from the military. Despite the prosecutor's recommendation of a very light sentence, Stowe maintained his innocence in order to preserve his military career. Only when counsel led him to believe that an *Alford* plea would allow him to maintain his Army career did Stowe seriously consider the prosecutor's plea bargain. Defense counsel failed to conduct any research of the law prior to providing his client with the critical and inaccurate information. Counsel's performance fell below an objective standard of reasonableness and constitutes deficient performance.

■ The voluntary nature of a defendant's guilty plea is not automatically destroyed because of erroneous advice by counsel. *McMann v. Richardson*, 397 U.S. 759, 770-71, 25 L. Ed. 2d 763, 773, 90 S. Ct. 1441 (1970). Under the *Strickland* test, even if counsel's performance is deemed deficient, the defendant must show prejudice: a reasonable probability that, but for counsel's unprofessional errors, defendant would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. at 58. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, at 694.

We conclude that counsel's erroneous advice did prejudice Stowe. It is clear from the evidence before this court that Stowe specifically asked about this consequence and relied upon the attorney's response in making his decision to plead guilty. But for counsel's erroneous, and therefore deficient, advice, Stowe would have demanded a trial.

Stowe has met the *Strickland* test for establishing ineffective assistance of counsel; he has shown that his attorney's performance was deficient and that he was prejudiced thereby. The trial court therefore erred in denying Stowe's motion to withdraw his plea.

Stowe has also raised an issue about the validity of the exceptional sentence. Because we reverse the denial of Stowe's motion to withdraw his guilty plea, we do not consider the challenge to the sentence.

We vacate the judgment and sentence and remand to the trial court for further proceedings.

ALEXANDER, C.J., and PETRICH, J. Pro Tem., concur.