[No. 22241-8-II.    Division Two.    July 16, 1999.]

THE STATE OF WASHINGTON, *Appellant*, v. KATHLEEN STOUGH, *Respondent*.

*Russell D. Hauge, Prosecuting Attorney*, and *Pamela Beth Loginsky, Deputy*, for appellant.

*Roger A. Hunko* (of *Wecker, Hunko*) for respondent (appointed counsel for appeal).

MORGAN, J. — In 1995, Kathleen Stough pleaded guilty to third degree assault. A year later, she moved to withdraw her plea. The trial court granted her motion, in part because she and her attorney commenced a sexual relationship shortly before her plea. The State appeals.

On January 11, 1995, Stough fired a bullet in the direction of her husband. He was not hit, but she was arrested for assault.

On January 12, Stough made her first appearance in court. She requested counsel at public expense, and her request was granted.

On January 13, the State charged Stough with second degree assault with a deadly weapon.[1] She pleaded not guilty.

On June 2, the last court day before trial was to start, Stough's attorney recommended that she plead guilty to a reduced charge of third degree assault. The attorney wrote out a plea form, which Stough signed. A few minutes later, they went before a superior court judge, who questioned Stough and accepted her plea.

On July 24, 1995, Stough was sentenced. The court imposed 240 hours of community service and 24 months of community supervision. During the ensuing year, the State alleges, Stough did not comply with her community supervision.

On July 10, 1996, Stough sent a letter to the trial court, asking to withdraw her guilty plea. She stated in part:

> . . . I was very surprised when my [attorney] suggested that I plead guilty. . . . I did not understand nor was I informed of the consequences this resolution of my case would bring. . . . I was not mentally capable of understanding this at the time of my plea because of . . . my emotional dependency on my [attorney].
>
> I am concerned about the representation provided to me by [my attorney] because in June of 1995 he initiated a romantic and sexual relationship with me. It was in this period of time that I made my guilty plea.
>
> With the trial set to start on Monday, June 5, 1995 [my attorney] came to my home at about noon on Friday, June 2 and said that he and the prosecutor had arrived at another plea agreement. He said that I ought to take it. . . .

---

[1]See RCW 9A.36.021(1)(c).

I asked him does this mean it will be all over. He said yes, hugged me, and then made love to me. I thought this plea meant it was all over. I thought this court hearing would be the end of my case. I did not understand the on-going consequences of a guilty plea.

He advised me that I had to go to the courthouse for this plea at 1:00 p.m. that afternoon. This gave me only about one half hour. [He] then left and went to his office.[2]

A few minutes later, as already described, she and her attorney appeared in court, and she entered her plea.

Responding to Stough's letter, the trial court appointed new counsel, secured a visiting judge, and scheduled a hearing. During the hearing, Stough testified that she and her first attorney had a sexual relationship that commenced on June 1, 1995, and ended in February 1996. She said she had paid "less attention" to her plea "because of [her] relationship with [her attorney],"[3] and that she had not understood the plea's consequences. She had received several romantic notes from the attorney, which the trial court admitted as exhibits.[4]

At the end of the hearing, the trial court entered the following findings of fact:

Ms. Stough testified that she plead[ed] guilty partly because she was having a sexual relationship with her counsel. She presented testimony of witnesses to the relationship and offered notes which the court finds were written by her counsel supporting her allegation, and the court finds that more prob-

---

[2]Clerk's Papers at 44-45.

[3]Report of Proceedings at 67.

[4]A questioned documents examiner, retired from the FBI, compared the handwriting on the notes to the handwriting on the plea form filed June 2, 1995. He was "almost 100%" certain that the notes had been written by the person who wrote the plea form. Report of Proceedings at 7 (Dec. 17, 1996). It is undisputed that the attorney wrote the plea form.

ably than not there was a sexual relationship with her counsel at the time of the change of plea.[5]

The court further found that Stough had not fully understood her plea, in part because of the "inappropriate relationship with her counsel."[6] Based on "the totality of the circumstances," the court granted Stough's motion to withdraw her plea.[7]

■■ On appeal, the State claims that the trial court lacked discretion to allow Stough to withdraw her plea. CrR 4.2(f) provides that "[t]he court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." A manifest injustice is one "that is obvious, directly observable, overt, not obscure."[8] The defendant has the burden of showing a manifest injustice.[9]

In *State v. Taylor*,[10] the Supreme Court described four "indicia of 'manifest injustice.'" Quoting the committee that wrote CrR 4.2(f), the court said that such "indicia" include " '(1) denial of effective counsel, (2) plea . . . not ratified by the defendant or one authorized [by him] to do so, (3) plea was involuntary, (4) plea agreement was not kept by the prosecution.' "[11]

Any one of *Taylor's* "indicia" may give rise to a manifest injustice under particular circumstances. The *Taylor* court

---

[5]Clerk's Papers at 119 (Finding of Fact 8). Neither party assigns error to this finding, so it is a verity on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994); *State v. McCollum*, 88 Wn. App. 977, 983, 947 P.2d 1235 (1997).

[6]Clerk's Papers at 119 (Finding of Fact 9). Finding 9 is badly garbled, but this appears to be its gist. Although the State contends to the contrary, we think Finding 9 is supported by substantial evidence.

[7]Clerk's Papers at 120.

[8]*State v. Saas*, 118 Wn.2d 37, 42, 820 P.2d 505 (1991) (quoting *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974)).

[9]*State v. Osborne*, 102 Wn.2d 87, 97, 684 P.2d 683 (1984).

[10]83 Wn.2d 594, 521 P.2d 699 (1974).

[11]*Taylor*, 83 Wn.2d at 597 (quoting CRIMINAL RULES TASK FORCE, WASHINGTON PROPOSED RULES OF CRIMINAL PROCEDURE 50 (West 1971)); *accord State v. Wakefield*, 130 Wn.2d 464, 472, 925 P.2d 183 (1996); *Saas*, 118 Wn.2d at 42.

itself noted that "any one of the above-listed indicia would independently establish 'manifest injustice' and would require a trial court to allow a defendant to withdraw his [or her] plea."[12]

Under particular circumstances, indicia not described in *Taylor* may also give rise to a manifest injustice. The Supreme Court has stated that the four indicia from *Taylor* are "nonexclusive,"[13] and it necessarily follows that a trial court must examine the "totality of circumstances" when deciding whether a manifest injustice exists.[14]

■■ Here, the trial court found a manifest injustice based on the "totality of circumstances." On appeal, however, we focus on the first *Taylor* indicator, denial of effective counsel.

An attorney is ineffective for Sixth Amendment purposes if (1) his or her performance is deficient and (2) the deficiency prejudices the client.[15] This Sixth Amendment test applies here because CrR 4.2(f) was patterned after ABA Standard 2.1,[16] and ABA Standard 2.1 states in pertinent part that "withdrawal is necessary to correct a manifest injustice whenever the defendant proves that . . . he was denied the effective assistance of counsel guaranteed him by constitution, statute, or rule." Performance is deficient if it falls below an objective standard of reasonableness based on all the circumstances.[17] Deficient performance is prejudicial if "there is a reasonable probability that, but

---

[12]*Taylor,* 83 Wn.2d at 597.

[13]*Wakefield,* 130 Wn.2d at 472; *Saas,* 118 Wn.2d at 42.

[14]The State claims that the trial court's application of a "totality of circumstances" standard is "unsupported by the law." State's Br. at 23. At bottom, this is the same as claiming that a trial court cannot find a manifest injustice without first finding one or more of the *Taylor* indicia. As the text indicates, we reject this position.

[15]*Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. McFarland,* 127 Wn.2d 322, 334, 899 P.2d 1251 (1995); *State v. Thomas,* 109 Wn.2d 222, 231, 743 P.2d 816 (1987).

[16]WASHINGTON PROPOSED RULES OF CRIMINAL PROCEDURE 50 (1971).

[17]*McFarland,* 127 Wn.2d at 335; *Thomas,* 109 Wn.2d at 225-26.

for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial."[18]

Applying this test here, we first address whether the lawyer for an accused performs deficiently by commencing a sexual relationship with the accused during the course of the representation. When a lawyer and client are considering whether the client should plead guilty, the lawyer must objectively evaluate the evidence and its legal effect (or lack thereof); objectively inform the client of the evaluation's results; and objectively recommend a course of action.[19] The lawyer's goal is to equip the client with the tools needed to make a knowing, voluntary and intelligent decision.[20] If the lawyer commences a sexual relationship with the client during the course of the representation, he or she creates significant but needless risks that emotions arising from the relationship will impair (a) his or her ability to "exercise independent professional judgment"[21] and (b) the client's ability to make a knowing, voluntary and intelligent decision free from improper influence by the lawyer. For these reasons, we hold that a lawyer performs deficiently by commencing a sexual relationship with an ac-

---

[18]*State v. Acevedo*, 137 Wn.2d 179, 198-99, 970 P.2d 299 (1999); *In re Personal Restraint of Riley*, 122 Wn.2d 772, 780-81, 863 P.2d 554 (1993); *State v. Stowe*, 71 Wn. App. 182, 188, 858 P.2d 267 (1993).

[19]*State v. Holley*, 75 Wn. App. 191, 197, 876 P.2d 973 (1994) ("In the context of plea bargains, effective assistance of counsel means that defense counsel actually and substantially assist his client in deciding whether to plead guilty."); *Stowe*, 71 Wn. App. at 187 ("Counsel has an obligation to inform a defendant of all 'direct' consequences of a guilty plea"); AM. BAR ASS'N, ABA STANDARDS FOR CRIMINAL JUSTICE DISCOVERY AND TRIAL BY JURY, commentary to § 4-5.2 (3d ed. 1996) (when deciding whether to plead guilty, "accused should have the full and careful advice of counsel").

[20]*Id. See also* RPC 1.2(a), which provides in part:

A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to sections (c), (d), and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered . . . .

[21]RPC 2.1 provides, "In representing a client, a lawyer shall exercise independent professional judgment and render candid advice."

cused during the course of the representation, and that Stough's attorney performed deficiently here.[22]

The remaining question is whether Stough was prejudiced by her attorney's deficient performance. The people with the most relevant knowledge were Stough and her first attorney. They both testified at the hearing on the motion to withdraw the plea. The attorney simply denied a sexual relationship. Although Stough waffled back and forth, she testified at times, expressly or inferentially, that she and the attorney had a sexual relationship; that because of their relationship, she had unduly relied on him, instead of thinking for herself; that because she had not been thinking for herself, she had not understood the consequences of what she was doing or made her own knowing and voluntary decision; and that if she had been thinking for herself, she would not have pleaded guilty. The trial court chose to credit her testimony, as it was permitted to do; it found that she and the attorney probably had a sexual relationship, and that she had not fully understood her plea.[23] Its findings are supported by substantial evidence, and we decline to disturb them. We conclude that Stough was denied the effective assistance of counsel; that Stough showed a "manifest injustice"; and that the trial court had discretion to vacate her plea.

Affirmed.

---

[22]*Cf. In re Heard*, 136 Wn.2d 405, 963 P.2d 818 (1998) (lawyer may be disciplined for engaging in sexual relations with a vulnerable client, even without a specific rule proscribing such conduct); Proposed (but not yet adopted) RPC 1.8(k), 137 Wn.2d Proposed-65 (a lawyer "shall not have sexual relations with a current client . . . unless a consensual sexual relationship existed between them at the time the lawyer/client relationship commenced").

[23]The trial court actually used three reasons to support its finding that Stough did not understand: She had not been arraigned on the amended information in open court, she had not expressly admitted to one of the elements of the crime charged in the amended information, and she had engaged in sex with counsel. The text omits the first two because, in our view, the last alone is sufficient to support the trial court's order allowing withdrawal of the plea.

ARMSTRONG, A.C.J., and SEINFELD, J., concur.

Review denied at 139 Wn.2d 1011 (1999).