

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69900-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DUSTIN SHANE IVERSON, | ) | |
| | ) | FILED: May 6, 2013 |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — Dustin Iverson appeals from the trial court's denial of his motion to withdraw his guilty plea to two counts of rape of a child in the first degree. Because he fails to demonstrate that withdrawal of his plea was necessary to correct a manifest injustice, we affirm.

## FACTS

In 2009, Child Protective Services investigated an allegation that Iverson sexually abused his daughter K., who was born in 1994. Iverson's daughter disclosed to Lewis County Sheriff Deputy Shannon that Iverson molested her weekly between the ages of four and eight. A sexual assault examination found physical evidence consistent with molestation.

Iverson was charged with five counts of rape of a child in the first degree. The State informed the court that it planned to seek exceptional sentences on all counts, based on five aggravating factors. The State also extended a plea offer to Iverson,

allowing him to plead guilty to two counts of rape of a child in the first degree, without aggravating factors.

Iverson was held in jail pending trial. Defense counsel was appointed to represent him. Counsel initially told Iverson that he had a good chance of prevailing. Subsequently, Iverson's counsel hired a defense investigator, who interviewed K. Both counsel and the investigator concluded that she would be a credible witness, and informed Iverson of their opinions. Counsel told Iverson that he did not believe he could win his case, and advised him to accept the State's plea offer.[1]

On June 2, 2011, Iverson signed a statement of defendant on plea of guilty, which set forth the standard range sentence as 138 to184 months with a maximum of life in prison. Following a colloquy, the trial court accepted Iverson's Alford[2] plea and scheduled a sentencing hearing.

Shortly thereafter, Iverson hired a new attorney and moved to withdraw his plea. The trial court conducted an evidentiary hearing. Iverson's former counsel testified that after interviewing K., he advised Iverson to take the plea deal rather than risk a potential 40-year sentence due to the aggravating factors.[3]

---

[1] Counsel did not interview other witnesses but requested that Iverson's family provide him any favorable evidence for his client. Iverson's family provided DVDs prepared from home movies showing Iverson and his daughter, and gave statements that Iverson's daughter previously made disclosures when she was three years old that indicated she may have been molested by a different family member. And although Iverson offered to submit to a polygraph examination, defense counsel did not arrange for one.

[2] North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[3] Counsel testified that he informed Iverson that the ultimate decision whether to plead guilty or stand trial was Iverson's to make, and that counsel was willing to proceed to trial.

Iverson's former counsel testified that on the day of the plea hearing, he met with Iverson for approximately 40 minutes and reviewed the plea offer line by line, including the addendum applicable to sex offenses. He discussed the potential term of prison time and the requirement of registering as a sex offender for life. He explained indeterminate sentencing, review by the Indeterminate Sentencing Review Board, and the requirement of sex offender treatment. He described the consequences of an Alford plea, and explained that Iverson would be ineligible for a special sex offender sentencing alternative (SSOSA) disposition.[4] He asked whether Iverson had any questions about his rights or the consequences of his plea. Iverson said he did not.

Iverson disputed substantially all of his former counsel's testimony. The trial court determined that the former counsel was credible, and entered findings that Iverson knowingly, intelligently and voluntarily entered his plea, denied Iverson's motion to withdraw his guilty pleas, and imposed sentence.

Iverson appeals.

## ANALYSIS

A defendant, having entered a guilty plea, may move the court to allow withdrawal of the plea.[5] The trial court will allow the plea to be withdrawn to prevent

---

[4] An offender is eligible for a SSOSA disposition only if all of the criteria listed in RCW 9.94A.670(2) are met. One of the criteria is that "the offender must, as a part of his or her plea of guilty, voluntarily and affirmatively admit he or she committed all of the elements of the crime to which the offender is pleading guilty." RCW 9.94A.670(2)(a). Iverson understood that to be eligible for a SSOSA, he would have to admit he committed a crime, which he was not willing to do. Iverson acknowledged this, stating, "He told me that I couldn't go to that [SSOSA] because I say I'm innocent." Report of Proceedings (RP) (Aug. 22, 2011) at 47.

[5] CrR 4.2(f).

manifest injustice.[6] Manifest injustice is defined by four nonexclusive factors, including whether the plea was not ratified by the defendant, the plea was not voluntary, effective counsel was denied, or the plea agreement was not kept.[7]

Iverson alleges that his plea was involuntary and he was denied effective assistance of counsel. Neither allegation is supported by the record.

### Voluntary Plea

Iverson first contends that his plea was involuntary because he was not fully informed of the direct consequences of this plea. But Iverson's signature on the statement on plea of guilty and his answers during the plea colloquy provide compelling evidence that his plea was voluntary.

Due process requires that a defendant in a criminal matter understand the nature of the charges against him or her and enter a plea to the charges voluntarily and knowingly.[8] Accordingly, guilty pleas may only be accepted by the trial court after it determines that the plea is voluntary.[9] When a defendant fills out a written statement on plea of guilty in compliance with CrR 4.2(g) and acknowledges that he or she has read it and understands it and that its contents are true, the written statement provides prima

---

[6] State v. Zhao, 157 Wn.2d 188, 197, 137 P.3d 835 (2006).

[7] Id.

[8] State v. Robinson, 172 Wn.2d 783, 790, 263 P.3d 1233 (2011). An Alford plea is valid when it "'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" State v. Stowe, 71 Wn. App. 182, 187, 858 P.2d 267 (1993) (quoting Alford, 400 U.S. 25 at 31)).

[9] CrR 4.2(d) ("The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea."); see also State v. A.N.J., 168 Wn.2d 91, 113-14, 225 P.3d 956 (2010) (defendant must be informed of all the direct consequences of his plea). A defendant need not show that a direct consequence about which they were

facie verification of the plea's voluntariness.[10] When the judge goes on to inquire orally of the defendant and satisfies himself on the record of the existence of the various criteria of voluntariness, the presumption of voluntariness is "well nigh irrefutable."[11]

To meet his burden that a guilty plea was not voluntarily made, a defendant must present some evidence of involuntariness beyond his self-serving allegations.[12] Iverson fails to do so.

Iverson contends that counsel failed to inform him about SSOSA, misinformed him about sex offender registration, told him that he would likely be out of prison in 13 or 15 years if he took the plea deal, and would only have to register as a sex offender for one year. Iverson also argues that it is "unlikely" that he would have accepted the plea if he knew that there was a possibility that he would receive an indeterminate sentence, because "[n]othing about his case made him appear like a candidate for release."[13] However, these are nothing more than self-serving allegations. Iverson's remarks during the evidentiary hearing were, likewise, nothing more than self-serving allegations.

Iverson's statements at the hearing to withdraw his plea were contradictory and at odds with his remarks to the court in his plea colloquy and his statement of defendant of

---

uninformed or misinformed was material to their decision to plead guilty. In re Pers. Restraint of Isadore, 151 Wn.2d 294, 301, 88 P.3d 390 (2004).

[10] State v. Branch, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996) (The signature of a defendant on the statement of defendant on plea of guilty form is strong evidence of the plea's voluntariness).

[11] State v. Perez, 33 Wn. App. 258, 261-62, 654 P.2d 708 (1982).

[12] State v. Osbourne, 102 Wn.2d 87, 97, 684 P.2d 683 (1984).

[13] Appellant's Br. at 16.

plea of guilty. At the evidentiary hearing, Iverson contended that his former counsel failed to explain the lifetime sex offender registration requirement. Yet he also testified "I don't remember if he said for life,"[14] and later conceded that he "believe[d]" counsel did inform him that "registration was lifetime."[15] He also acknowledged that former counsel discussed the charges with him, discussed both the first charging document and, later, the amended charging document, and described "what people were claiming that [Iverson] did."[16] This is not the type or quality of evidence necessary to demonstrate the involuntariness of a plea.

By contrast, the record overwhelmingly demonstrates that his plea was voluntary. Iverson entered a plea of guilty to two counts of rape of a child in the first degree. The trial court found that the defendant entered the pleas "knowingly, intelligently, freely and voluntarily," and that "[t]he pleas are made on the advice of counsel, with full knowledge of consequences [and] awareness of rights."[17] These findings are soundly based on the plea documents and colloquy.

During the plea colloquy, the judge asked Iverson if he understood the charges in counts 1 and 2 of the second amended information. Iverson replied "Kind of, yeah."[18] The judge asked, "What do you mean, 'kind of?' Do you not understand what they are?"[19] Iverson responded "Yes."[20] The court replied, "Do you need me to read those

---

[14] RP (Aug. 22, 2011) at 31.

[15] Id. at 42.

[16] Id. at 40.

[17] RP (June 2, 2011) at 12.

[18] Id. at 5.

[19] Id.

[20] Id.

charges to you this afternoon in open court?"[21] Iverson answered, "No."[22] When the court inquired whether Iverson "went over [the statement of defendant on plea of guilty] carefully with [defense counsel] before you signed it?" Iverson answered, "Yes."[23]

Iverson's statement on plea of guilty contains the following recitations:

> 7. I plead guilty to: count 1 Rape of a Child in the First Degree, count 2 Rape of a Child in the First Degree in the second amended information. I have received a copy of that Information.
>
> 8. I make this plea freely and voluntarily.
>
> 9. No one has threatened harm of any kind to me or to any other person to cause me to make this plea.
>
> 10. No person has made promises of any kind to cause me to enter this plea except as set forth in this statement.
>
> 11. The judge has asked me to state what I did in my own words that makes me guilty of this crime. This is my statement: Alford plea to both counts.
>
>    [X] Instead of making a statement, I agree that the court may review the police reports and/or a statement of probable cause supplied by the prosecution to establish a factual basis for the plea.
>
> 12. My lawyer has explained to me, and we have fully discussed, all of the above paragraphs and the "Offender Registration" Attachment. I understand them all. I have been given a copy of this "Statement of Defendant on Plea of Guilty." I have no further questions to ask the judge.[24]

---

[21] Id.

[22] Id.

[23] Id. at 11.

[24] Clerk's Papers at 55. Iverson signed the statement, as did his attorney, the deputy prosecuting attorney, and the judge.

The trial court asked Iverson whether he understood that the State's sentence recommendation was for "a standard range of lifetime supervision and [standard] confinement range of 138 to 184 months on each . . . [and] 36 months community custody thereafter."[25] Iverson again replied, "Yes."[26] Iverson told the court he understood he would be required to register as a sex offender for life, and would be under "lifetime supervision by the Department of Corrections."[27] The court explained the nature of an Alford plea to Iverson, and Iverson answered that he understood.[28]

The evidentiary record overwhelmingly supports the trial court's conclusion that Iverson's plea was knowingly, intelligently, and voluntarily entered. The fact that Iverson later changed his mind does not contravene this determination.[29] Iverson's challenge to the voluntariness of his plea fails.

### Effective Assistance of Counsel

Iverson's argument that he was denied effective assistance of counsel is similarly unpersuasive. To prevail on an ineffective assistance of counsel claim, Iverson must show that the attorney's performance was deficient and the deficient performance

---

[25] RP (June 2, 2011) at 10.

[26] Id.

[27] Id.

[28] Id. at 6.

[29] Iverson's new counsel argued at the hearing on the motion to withdraw the plea that Iverson "decided to accept the plea bargain and . . . immediately regretted it and immediately changed his mind . . . . [He] was so distraught that he did not understand that during that taking of the plea it was not too late for him to change his mind." RP (Aug. 22, 2011) at 17. Iverson testified that he believed he made a mistake when he acknowledged, in response to the court's questioning, that he agreed "it's highly likely that a judge or jury would find beyond a reasonable doubt that you are guilty of at least two counts of Rape of a Child First Degree Domestic Violence." RP (June 2, 2011) at 9. He contended that this was a mistake "because I'm innocent." RP (Aug. 22, 2011) at 45.

prejudiced the defense.[30] The presumption is that the attorney's conduct was not deficient.[31] Deficient performance exists only if counsel's actions were outside the wide range of professionally competent assistance.[32] Prejudice "requires 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[33]

The record amply supports the trial court's factual findings, and reveals that Iverson received effective assistance of counsel.[34] The trial court found that counsel informed Iverson of the nature of the charges, allowed him to read the discovery, and spent 40 to 50 hours reviewing the discovery and preparing for trial. These findings were all supported by counsel's testimony, the plea documents, and Iverson's own remarks at the plea colloquy.[35] Former counsel testified he met with Iverson approximately six times for up to an hour at a time and also spoke with him by telephone. He testified that he always discussed the charges Iverson was facing, discussed the original and amended information with him, and that Iverson looked at the discovery in person on more than

---

[30] Strickland v. Washington, 466 U.S. 688, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

[31] Reichenbach, 153 Wn.2d at 130.

[32] Strickland, 466 U.S. at 690.

[33] Id. at 694.

[34] To the extent that Iverson's factual allegations concerning his relationship with his trial counsel involve matters outside the trial court record, such allegations are not reviewable in this direct appeal. Such allegations can only be considered as part of a personal restraint proceeding where evidence can be received. State v. Bugai, 30 Wn. App. 156, 158, 632 P.2d 917 (1981); State v. King, 24 Wn. App. 495, 505, 601 P.2d 982 (1979).

[35] In his opening brief, Iverson acknowledged that "the record shows several visits to the jail" amounting to between three to six hours, pretrial hearings, conversations with Iverson's family and friends, as well as the interview of K. Appellant's Br. at 13.

one occasion. Counsel acknowledged that there was a glass window between him and Iverson in at least some of their interviews, but he was able to show documents to Iverson by holding them against the window.

The findings that counsel apprised Iverson of the consequences of his plea, including indeterminate sentencing, lifetime registration, lifetime community custody and sexual deviancy treatment, and ineligibility for a SSOSA disposition were also supported by the record, particularly by counsel's testimony that he went through the plea offer line by line with Iverson. That document listed the consequences that Iverson now claims were not disclosed to him.[36]

Iverson argues that the report of proceedings "shows confusion and ambiguous responses to the court's colloquy," and the "testimony regarding the sentencing hearing involves nonverbal gestures and actions."[37] But this argument does not help Iverson. The trial court's ability to resolve confusion or ambiguity on the basis of the witnesses' demeanor and nonverbal cues is the reason its factual findings are accorded deference on appeal. The trial court resolved all of these factual issues against Iverson based on substantial evidence.

Iverson's reliance on our Supreme Court's holding in State v. A.N.J. is misplaced.[38] The A.N.J. court allowed a juvenile defendant to withdraw his plea because defense counsel's deficient representation constituted a manifest injustice.[39]

---

[36] Counsel also testified that Iverson understood the difference between an Alford plea and a straight guilty plea, and knew that he was more likely to get the high end of the range if he chose to plead guilty via an Alford plea.

[37] Appellant's Br. at 2-3.

[38] 168 Wn.2d 91, 225 P. 3d 956 (2010).

[39] Id. at 113-14.

But the facts of A.N.J. are easily distinguishable from the facts of Iverson's case. A.N.J.'s counsel met with him for as little as 55 minutes total before the plea hearing,[40] whereas Iverson's counsel met with him for several hours. A.N.J.'s counsel did not talk to witnesses or use an investigator;[41] Iverson's counsel did both. A.N.J.'s counsel admitted he probably did not explain the consequences of the plea, and that A.N.J. never saw the plea documents until immediately before the plea hearing.[42] By contrast, Iverson's counsel testified that he went through the plea agreement with Iverson and discussed the consequences of the plea. A.N.J. is distinguishable on its facts and does not support appellate relief under the facts of Iverson's case.

Iverson fails to demonstrate that he received ineffective assistance of counsel and that withdrawal of his guilty pleas was necessary to correct a manifest injustice.

Affirmed.

WE CONCUR:

---

[40] Id. at 102.

[41] Id. at 103-104.

[42] Id. at 103 n.8.

11