FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 SEP 30 AM 10: 14



# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 68847-2-I |
| Respondent, | ) | (anchored w/No. 68848-1-I) |
| | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ANTHONY RUSSELL WOODS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: September 30, 2013 |

SPEARMAN, A.C.J. — After Anthony Woods pleaded guilty to possession of cocaine and solicitation to deliver cocaine, he twice moved to withdraw his guilty plea. The trial court denied the motions. He appeals, contending that during plea negotiations, defense counsel led him to believe he would be released after serving ten months of the 15-month sentence contemplated by the plea agreements. He also claims in a statement of additional grounds that his judgment and sentence is facially invalid because (1) it did not include good time credit for presentence time served in King County Jail and (2) his two current offenses, used to compute his offender score, do not encompass the same criminal conduct. Finding his claims to lack merit, we affirm.

## FACTS

The State charged Anthony Woods with possession of cocaine and delivery of cocaine. The State and Woods, who was represented by defense counsel Mark Flora, reached a plea agreement under which Woods pleaded guilty to possession of cocaine and a reduced charge of solicitation to deliver cocaine and both parties recommended 15-month concurrent terms of confinement based on an agreed offender score of 5.[1] The trial court accepted Woods' guilty plea on June 2, 2011 and on June 24 imposed the recommended sentence.[2] At sentencing, Woods was credited with having served 262 days.

Sometime before January 24, 2012, Woods was released from prison. 3 Verbatim Report of Proceedings (VRP) at 2-3.[3] On January 3, 2012, Woods, represented by new counsel, filed a motion to withdraw his guilty plea based on grounds he does not assert on appeal.[4] At the February 24 hearing on the motion, Woods asserted one additional claim on the basis that Flora failed to advise him that the Department of Corrections (DOC) could hold him past his anticipated early release date if he failed to "have a valid address the DOC can

---

[1] Appendix B to the plea agreement for each offense lists eight felonies committed by Woods from 1975-1999. The parties agreed that four of the prior felonies would not score. The concurrent offense and the remaining four felonies resulted in an agreed offender score of five.

[2] The court also imposed 12 months of community custody.

[3] 1VRP-June 2, 2011 and March 29, 2012; 2VRP-June 24, 2011; 3VRP-January 24, 2012; 4VRP-February 24, 2012; 5VRP-June 7, 2012.

[4] Woods argued that he received ineffective assistance of counsel because (1) counsel failed to challenge the inclusion of his out-of-state convictions in his offender score on the basis of reliability; (2) counsel failed to investigate the issue of comparability of the out-of-state convictions; and (3) counsel failed to object at the plea or sentencing hearings to certain out-of-state convictions being deemed comparable felonies.

2

confirm. . . ." 4VRP at 4. He argued that his guilty plea was involuntary because Flora misadvised him about how long he would remain incarcerated.

Woods did not testify at the hearing on the motion. Flora testified that he remembered a conversation with Woods about how much time Woods would serve on a 15-month sentence with good time credit. Flora stated:

> My conversation with him was that the DOC would be crazy not to release him. In fact, they turned out to be crazy. I don't know why they didn't release him,[sic] Whether or not he had an address. We are going to broke and they spent another, I don't know, $25,000 to house him. It is nuts.

4VRP at 25. He testified, "I am sure that the impression that [Woods] got from me was that I couldn't imagine the Department of Corrections not releasing him." 4VRP at 26. Flora stated that he did not know "what the rules are with respect to the DOC." Id. Flora did not inform Woods that the DOC might not release him on his release date without a stable address. He was aware that Woods did not have a stable address at the time he represented Woods and that Woods had housing assistance. He did not recall if he knew whether the DOC would assist Woods with housing programs. Flora discussed with Woods the risk of a lengthier sentence if he proceeded to trial and was convicted. Flora recalled that Woods would have faced a longer sentence of about 20 to 60 months if he did not accept the plea.

The trial court denied Woods' motion on April 13, 2012. It found that Flora and Woods did not discuss the consequences of a failure to give an address that met DOC criteria. The court noted that the only evidence as to why Woods was

No. 68847-2-I/4

not released prior to completing his full sentence was a statement by Woods'

counsel, who indicated that "she spoke to DOC staff who indicated that Mr.

Woods' 'release plan' failed to meet DOC criteria.'" Clerk's Papers (CP) at 72.

The court found there was no evidence as to DOC criteria, how the release plan

failed to meet such criteria, or whether the release plan could have been

modified to satisfy DOC criteria, "i.e., by providing an alternate address." Id. It

also found there was no evidence that an inmate's homeless status automatically

disqualifies the inmate from consideration for early release. The court concluded:

> The mere fact alone that defendant was held for his full
> sentence rather than released early because he failed to
> provide an adequate release plan does not establish that this
> was a direct consequence of defendant's plea to this charge.
> He did not automatically or immediately lose the opportunity to
> be released early because he pled guilty. Nor has Mr. Woods
> shown that his "homeless" status at the time of entering the
> plea was the cause of him being held beyond his early release
> date or that such status was an immutable characteristic which
> triggered direct and definite consequences. . . . Mr. Woods
> has failed to show that his "homeless" status at the time of
> entering the plea was an immutable characteristic that, under
> DOC regulations, automatically or largely automatically results
> in being held for the full sentence.

CP at 76.

On June 5, 2012, Woods filed another motion to withdraw his guilty plea,

arguing that counsel provided ineffective assistance by failing to seek his

immediate release at sentencing.[5] The court denied the motion on June 7.

---

[5] Woods argued that the sentencing court, while it credited him with 262 days for time actually served in King County Jail, erroneously failed to credit him with 131 days of good time credit from his presentence time served in King County Jail.

4

Woods appeals the trial court's orders denying his motions to withdraw his guilty plea.

## DISCUSSION

### Involuntary Plea

We review de novo a trial court's denial of a motion to withdraw a guilty plea that is based on ineffective assistance of counsel. State v. A.N.J., 168 Wn.2d 91, 109, 225 P.3d 956 (2010). The test under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) applies to claims of ineffective assistance of counsel during the plea process. State v. Stowe, 71 Wn. App. 182, 186, 858 P.2d 267 (1993). A defendant must show that (1) his counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced him. Strickland, 466 U.S. at 687.

The trial court "shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." CrR 4.2(d). A guilty plea is involuntary when a defendant is not informed of all direct consequences of pleading guilty. In re Pers. Restraint of Isadore, 151 Wn.2d 294, 300, 88 P.3d 390 (2004). A direct consequence is one having a definite, immediate, and largely automatic effect on the range of punishment. State v. Ross, 129 Wn.2d 279, 284, 916 P.2d 405 (1996). A defendant need not be informed of all possible collateral consequences of his plea. In re Isadore, 151 Wn.2d at 298. However, affirmative misinformation about a collateral consequence may permit withdrawal

of a guilty plea if the defendant relied on that misinformation when deciding to plead guilty. State v. Stowe, 71 Wn. App. 182, 187-89, 858 P.2d 267 (1993). A defendant must be allowed to withdraw a guilty plea "whenever it appears that the withdrawal is necessary to correct a manifest injustice." CrR 4.2(f).

Woods claims he involuntarily pleaded guilty based on inaccurate information from Flora. He contends he was affirmatively misinformed of the consequences of pleading guilty because Flora led him to believe he would be released after serving 10 months of the 15-month sentence under the plea agreement. Woods relies primarily on A.N.J. and Stowe.

In A.N.J., juvenile respondent A.N.J. pleaded guilty to child molestation in the first degree. A.N.J., 168 Wn.2d at 96. He later sought to withdraw his guilty plea on various grounds, arguing, among other things, that he was misinformed by defense counsel about the consequences of his plea. Id. at 114. Specifically, defense counsel did not explain the difference between registration as a sex offender and the record of a conviction, and led A.N.J. to believe that his juvenile conviction could later be removed from his record. Id. at 116-17. But while a sex offender could petition to be relieved of the obligation to register, "the record of juvenile sex offenses never goes away." Id. at 115-16, (citing RCW 9.94A.525(2). The Court concluded that while defense counsel's failure to advise A.N.J. that his juvenile sex conviction would remain on his record forever did not, in and of itself, rise to a manifest injustice, "if A.N.J. was misinformed that his conviction could be removed from his record, then he should be allowed to withdraw his plea." Id. at

116. The Court concluded that A.N.J. had been misinformed as to the consequences of his plea and was entitled to withdraw it. Id. at 117.

In Stowe, Stowe entered an Alford[6] plea to second degree assault of his infant son. Stowe, 71 Wn. App. at 183. He moved to withdraw his plea on the basis that defense counsel affirmatively misinformed him regarding whether the plea would affect his military career. He had entered his plea after defense counsel told him that if he entered an Alford plea, he could probably remain in the Army and could have his jail time tacked on to his Army time. Id. at 185. The Army, however, had discharged him immediately after entry of his plea. Id. This court held that Stowe was prejudiced by his counsel's advice regarding the impact of an Alford plea on his military career. Id. at 187. We explained that although "defense counsel does not have an obligation to inform his client of all possible collateral consequences of a guilty plea, . . ." the question is "not whether counsel failed to inform defendant of collateral consequences, but rather whether counsel's performance fell below the objective standard of reasonableness when he affirmatively misinformed Stowe of the collateral consequences of a guilty plea." Id. We noted that Stowe had informed his attorney that his primary reason for not wanting to accept a guilty plea was his desire to continue his military career. Id. at 188. Stowe had made it clear that he would rather risk a trial than plead guilty and face definite discharge from the military, and entered an Alford plea only after counsel incorrectly informed him

---

[6] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

7

that he would be able to continue his career. Id. We concluded that defense counsel's advice prejudiced Stowe because it was clear that Stowe specifically relied on counsel's advice and would not otherwise have entered the plea. Id. at 189.

Here, we conclude that Woods fails to establish that counsel's performance was deficient or that it prejudiced him. Woods agreed to a 15-month sentence. He contends Flora led him to believe he would be released after serving only ten months, with good time credits. The specific basis of this claim, as he argued below, was that Flora failed to advise him that the DOC could hold him past his early release date if Woods failed to have a valid address. Woods does not contend that early release was a direct consequence of pleading guilty. And as the trial court correctly concluded, Woods did not automatically lose or obtain the opportunity to be released early because he pleaded guilty. Thus, Flora's statements regarding early release related to a collateral consequence of pleading guilty. Affirmative misinformation about a collateral consequence may permit withdrawal of a guilty plea if the defendant relied on that misinformation in pleading guilty. Stowe, 71 Wn. App. at 187-89.

But here, unlike in A.N.J. and Stowe, Woods does not establish that Flora gave him specific misinformation about early release. As the State points out, although the record shows that Flora told Woods that the DOC would be "crazy" not to release him early with good time credit, there is no evidence that Flora gave him any more specific assurances or information, provided misinformation

8

about DOC release plans, or misinformed him about the consequences of failing to supply the DOC with an approved address. Woods also does not establish that he relied on misinformation from Flora in pleading guilty. Nothing in the record establishes that Woods would not have pleaded guilty had Flora not said he could not imagine the DOC not releasing Woods early with good time credit.

Furthermore, the record does not establish why Woods was not released early.[7] Woods' attorney at the hearing on the motion to withdraw his guilty plea, stated only that DOC staff indicated that Woods' release plan did not meet DOC criteria. Woods did not provide any evidence from the DOC about the circumstances surrounding his release or about DOC's release plan for him. He offered no evidence in support of his contention that the DOC failed to release him earlier due to lack of a valid address.

## Good Time Credit

In a statement of additional grounds, Woods claims that the sentencing court failed to give him earned early release ("good time") credit on his judgment and sentence for presentence time served in King County Jail prior to sentencing.[8] He contends his judgment and sentence is invalid on its face and

---

[7] The record does not establish exactly when Woods was released from DOC custody, but the State does not dispute that Woods was not released early.

[8] The substance of this claim is similar to that made by counsel in Woods' June 5, 2012 motion to withdraw his guilty plea.

violates RCW 9.94A.505(6),[9] due process, and double jeopardy.[10] Based on these claims, he seeks to withdraw his guilty plea. In support of his argument, Woods attaches to his statement of additional grounds two documents titled "Jail Certification and Authorization for Earned Early Release Credit" from the King County Department of Adult Detention Records Office.[11] One document pertains to the time Woods spent in King County Jail for the possession charge and the other pertains to his time in jail for the solicitation charge. Each indicates a number of actual days served and a number of good time days earned. These forms are dated June 27, 2011, after Woods was sentenced and after entry of the judgment and sentence on June 24, 2011. The forms were not before the sentencing court.

Woods' claims are without merit. To the extent his claim is that the sentencing court was required to revise its judgment and sentence after the King County Jail issued its certification of his good time credit and indicate on the judgment and sentence the number of earned good time credit, he cites no authority for such a proposition. Moreover, "only a facility in which [an offender] had been in custody could certify good time credits, not a court." In re Pers.

---

[9] RCW 9.94A.505(6) provides, "The sentencing court shall give the offender credit for all confinement time served before the sentencing if that confinement was solely in regard to the offense for which the offender is being sentenced."

[10] Woods also asserts a claim of ineffective assistance based on counsel's alleged failure to argue that Woods should receive credit for presentence good time served in King County Jail prior to sentencing. We do not reach this claim given our conclusion that Woods fails to show error in the judgment and sentence.

[11] These documents do not appear in the record before this court, and it is therefore unclear whether the trial court ever saw them.

Restraint Petition of Erickson, 146 Wn. App. 576, 586, 191 P.3d 917 (2008). Where, as here, an offender is transferred from the custody of a county jail to the DOC, the DOC is responsible for crediting the offender with any good time credit certified by the county jail. Id. at 586. While the DOC "is entitled to give presumptive legal effect to a county jail's certification if it does not contain apparent or manifest errors of law," id. at 585 (citing In re Pers. Restraint of Williams, 121 Wn.2d 655, 664, 853 P.2d 444 (1993)), Woods does not appear to be claiming that the DOC failed to give him credit for good time earned in King County Jail.[12] To the extent he is making such a claim, we cannot review it, as it involves matters outside of the record. State v. McFarland, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995). There is no evidence from the DOC regarding its release plan for Woods or its calculation of his good time credits, including its consideration of good time credits earned in King County Jail.

Finally, for this claim Woods seeks the remedy of withdrawing his guilty plea. But he does not explain how his plea was involuntary on this basis, given that the judgment and sentence was not entered until after his plea. There is also no showing of a manifest injustice arising from the fact that the judgment and sentence was not revised after sentencing to reflect Woods' good time credit.

---

[12] Woods appears to suggest that DOC did in fact give him credit for presentence good time earned in King County Jail and that the reason he was not released early was because he did not have a DOC-approved address.

## Offender Score

Woods also claims in his statement of additional grounds that the judgment and sentence is facially invalid because his two current offenses, used to compute his offender score, do not encompass the same criminal conduct.[13] He points out that the acts forming the basis for possession of cocaine were committed on June 1, 2010, while the acts underlying the solicitation to deliver cocaine charge were committed on July 27, 2010.

This claim lacks merit. Woods' two offenses were not counted as the same criminal conduct, as reflected in the judgment and sentence for each offense.

Affirmed.

WE CONCUR:

_____

---

[13] Woods also asserts he was denied effective assistance of counsel because his attorney failed to argue that his current offenses were not the same criminal conduct. We need not reach this argument because we conclude the underlying claim lacks merit.