# FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
APRIL 9, 2026

*Stephens, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 9, 2026

*Sarah Pendleton*

SARAH R. PENDLETON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 103569-1 |
| AKEEL BIN-BELLAH, | EN BANC |
| Respondent. | Filed: April 9, 2026 |

STEPHENS, C.J.—The State of Washington charged Akeel Bin-Bellah with one count of first degree assault arising from a December 2017 incident in which he beat and seriously injured his mother. In a negotiated plea agreement, Bin-Bellah pleaded guilty to one count of second degree assault and three counts of fourth degree assault in exchange for a substantially reduced sentence. As part of his plea agreement, Bin-Bellah stipulated to several facts, including that each count of assault constituted a separate and distinct act. Nonetheless, in this personal restraint petition (PRP), he collaterally attacks his judgment and sentence on the grounds that his multiple convictions for a single assault violate double jeopardy. Division One of the Court of Appeals granted the PRP and vacated three of Bin-Bellah's assault convictions. We granted the State's motion for discretionary review and now reverse.

The central issue in this case is whether criminal defendants such as Bin-Bellah can negotiate with the State and plead guilty to multiple, even fictitious, lesser offenses when they determine it is in their best interests to do so. Bin-Bellah contends that the underlying record of his assaultive conduct demonstrates that he committed only one assault. He concludes that his judgment and sentence is therefore invalid because it punished him four times for a single criminal act, contrary to his constitutional rights under the double jeopardy clause. The State counters that the multiplication of charges during plea bargaining is permissible under our precedent so long as the plea is entered voluntarily and knowingly, and the trial court finds a factual basis for the original charges. In the State's view, Bin-Bellah's double jeopardy argument is foreclosed by his voluntary plea to one count of second degree assault and three counts of fourth degree assault supported by affirmative factual admissions.

We agree with the State. Consistent with established precedent, Bin-Bellah's plea to multiple assault charges was constitutionally permissible and his judgment and sentence cannot now be collaterally attacked on double jeopardy grounds. We reverse the Court of Appeals, reinstate his three fourth degree assault convictions, and dismiss his PRP.

FACTUAL BACKGROUND

On December 10, 2017, Bin-Bellah severely beat his mother, Darlene Maria Slade, causing her substantial injuries, including extensive traumatic brain damage that required hospitalization and continuing care. The State charged Bin-Bellah with one count of first degree assault based on this incident. In a separate, earlier incident, the State charged Bin-Bellah with second degree robbery for beating a convenience store clerk and taking some items. Bin-Bellah and the State entered plea negotiations encompassing both charges.

The State and Bin-Bellah reached a global, indivisible plea agreement to resolve his assault and robbery charges. As relevant to this PRP, the State reduced the charge for Bin-Bellah's assault on his mother from one count of first degree assault to four lesser counts: one count of second degree assault and three counts of fourth degree assault. In addition, the State agreed to reduce the second degree robbery charge to first degree theft and third degree assault and further recommended to the trial court that these sentences run concurrently with the four assault convictions.

In his felony plea to second degree assault, Bin-Bellah admitted to "intentionally assault[ing] Darlene Maria Slade and thereby recklessly caus[ing] serious bodily injury when [he] pushed her onto the ground and kicked her in the head." Br. of Pet'r, App. at 23 (Wash. Ct. App. No. 83711-7-I (2024)). In his

3

nonfelony plea agreement to three counts of fourth degree assault, Bin-Bellah agreed there was a "substantial likelihood of conviction on the original [first degree assault] charge" and he was "pleading guilty to three counts of assault in the fourth degree . . . to take advantage of a plea bargain offered by the prosecution." *Id.* at 38. Bin-Bellah acknowledged that there was no independent factual basis for the three counts of fourth degree assault but stated that he was nonetheless "knowingly and voluntarily pleading guilty" to these three additional counts as permitted by *State v. Bao Sheng Zhao*, 157 Wn.2d 188, 137 P.3d 835 (2006), and *In re Personal Restraint of Barr*, 102 Wn.2d 265, 684 P.2d 712 (1984). Br. of Pet'r, App. at 38 (Wash. Ct. App. No. 83711-7-I (2024)).

As part of his plea, Bin-Bellah stipulated that "all counts are separate and distinct acts," and he agreed that "any attempt to . . . appeal or collaterally attack any conviction or agreed sentence under this cause number . . . [would] constitute a breach of this agreement." *Id.* at 25 (formatting omitted) (Wash. Ct. App. No. 83711-7-I (2024)). During his plea colloquy with the court, Bin-Bellah again verbally acknowledged that "all counts are separate and distinct acts" and that his plea was knowing and voluntary. Guilty Plea Hr'g at 11-12, 16.

The trial court accepted Bin-Bellah's plea as knowing and voluntary, sentencing him to a term of 7 years' incarceration for the second degree assault conviction and to three 364-day terms for each of the fourth degree assault

4

misdemeanor convictions. The court determined that these sentences would be served consecutively but concurrently with the unrelated robbery and assault charges. The initial judgment and sentence was entered on December 20, 2019. After the sentence was entered, the Department of Corrections objected to its structure, noting a perceived error in the total months of confinement. The sentencing court corrected the error and entered an amended judgment and sentence on July 31, 2020.

The plea agreement and attendant sentencing structure benefited Bin-Bellah substantially. Had he been convicted of the first degree assault as originally charged, he faced a sentencing range of 20 to 36.5 years in prison because of his high offender score. RCW 9.94A.510, .515, .525(21). The plea agreement, therefore, allowed Bin-Bellah to avoid a sentence that "would have been double or triple" the sentence he ultimately received after pleading guilty to the amended multiple charges. Suppl. Br. of Pet'r at 5 (emphasis omitted).

On April 30, 2021, less than one year after entry of the amended judgment and sentence, Bin-Bellah filed a CrR 7.8 motion in the trial court, seeking relief from judgment on double jeopardy grounds. Bin-Bellah sought the vacatur of his three fourth degree assault convictions but not the invalidation of the rest of his plea agreement. The trial court transferred the motion to the Court of Appeals for treatment as a PRP.

Division One of the Court of Appeals granted the PRP on the ground that Bin-Bellah's three fourth degree assault convictions and sentences violated double jeopardy because in this case "there was only one criminal act." *In re Pers. Restraint of Bin-Bellah*, No. 83711-7-I, slip op. at 4 (Wash. Ct. App. Sep. 30, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/837117.pdf. The court vacated Bin-Bellah's fourth degree assault convictions and remanded for resentencing on the second degree assault conviction.

We granted the State's motion for discretionary review and accepted an amicus brief from the Washington Association of Prosecuting Attorneys (WAPA).

ANALYSIS

The protection against double jeopardy guaranteed by the Washington and United States Constitutions provides that "[n]o person shall . . . be twice put in jeopardy of life or limb." U.S. CONST. amend. V; WASH. CONST. art. I, § 9. The double jeopardy clause of the Washington State Constitution is concurrent with the United States Constitution. *State v. Gocken*, 127 Wn.2d 95, 107, 896 P.2d 1267 (1995). The proper interpretation and application of the double jeopardy clause presents a question of law we review de novo. *In re Pers. Restraint of Francis*, 170 Wn.2d 517, 523, 242 P.3d 866 (2010).

The prohibition against double jeopardy provides three different protections for defendants, "one of which protects against multiple punishments for the same

6

offense." *State v. Bobic*, 140 Wn.2d 250, 260, 996 P.2d 610 (2000). Double jeopardy is not implicated if a defendant receives separate punishments for different offenses. *State v. Ray*, 5 Wn.3d 350, 362, 575 P.3d 321 (2025). Generally, a defendant waives their double jeopardy rights by pleading guilty and there is no requirement that this waiver be expressly communicated. *United States v. Broce*, 488 U.S. 563, 569, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989). Narrow exceptions to this general rule exist if "on the face of the record the court had no power to enter the conviction or impose the sentence." *Id.* at 569-71 (holding that defendants could have challenged factual questions by going to trial but "chose not to, and hence relinquished that entitlement").

This case turns on whether Bin-Bellah may collaterally attack his sentence on double jeopardy grounds despite entering a knowing and voluntary plea containing factual stipulations to separate and distinct acts.

We hold that Bin-Bellah's unchallenged, knowing, and voluntary plea, stipulating to four separate and distinct assaults for the purpose of sentencing forecloses his double jeopardy claim. We therefore reverse the Court of Appeals and dismiss Bin-Bellah's PRP. We decline to decide whether Bin-Bellah violated his plea agreement by collaterally attacking his sentence, nor do we address the question of appropriate remedies when multiple convictions violate double jeopardy.

7

*Bin-Bellah's Guilty Plea to Four "Separate and Distinct Acts" Forecloses His Double Jeopardy Claim*

Bin-Bellah does not dispute that he knowingly and voluntarily pleaded guilty to four separate and distinct acts as the basis for his four assault convictions. He seeks to retain the benefit of his bargain by enforcing the plea agreement while simultaneously invalidating his three lesser charges as unconstitutional, arguing they are fictitious in light of the probable cause statement supporting only the original first degree assault charge. Corrected Suppl. Br. of Resp't at 12 (asserting the sentence unconstitutionally imposes multiple punishments for "only one possible assault, if that"). His argument runs counter to Washington's flexible approach to plea bargaining. We begin by explaining the basis for that approach and its benefits.

*A. Washington's Flexible Approach to Plea Bargaining*

Flexibility in the plea bargaining framework has been an essential part of our criminal justice system since we endorsed it in *Barr*. 102 Wn.2d at 270; *see also Zhao*, 157 Wn.2d at 200. The ability of both the State and the defendant to negotiate an agreed resolution through plea bargaining on charges is a critical part of this system. 13 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 3401, at 2 (3d ed. 2004) ("Plea negotiations are an important, if not essential, part of the criminal justice system."); *Missouri v. Frye*, 566 U.S. 134,

143, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012) ("[O]urs 'is for the most part a system of pleas, not a system of trials.'" (quoting *Lafler v. Cooper*, 566 U.S. 156, 170, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012)). Plea bargaining helps defendants avoid excessive pretrial confinement, provides certainty regarding their potential punishments, and jump-starts the rehabilitation process. *State v. Harris*, 4 Wn.3d 108, 119, 559 P.3d 499 (2024). It also preserves public resources and provides swifter closure for victims. *Id.* at 120.

We have long recognized that plea bargaining may include charge bargaining, allowing a defendant to plead guilty to amended charges that have no factual basis so long as the record demonstrates that the plea was voluntary and knowing, and there was a factual basis for the originally charged crime. *Zhao*, 157 Wn.2d at 200; *Barr*, 102 Wn.2d at 269-70. *Zhao* and *Barr*'s flexible approach provides numerous benefits, the chief being that it enables the parties to arrive at a mutually agreeable sentence, whereby the defendant may "choose to plead guilty to a related charge that was not committed[] in order to avoid near certain conviction for a greater offense." *Zhao*, 157 Wn.2d at 200. At its core, our flexible approach empowers criminal defendants to determine the course of action that is in their best interest. *Barr*, 102 Wn.2d at 270. A defendant may benefit in several ways—for instance, they may avoid conviction on a strike offense or on an offense that creates negative immigration consequences. *See, e.g.*, WASH. DEF. ASS'N, USING *BARR/ZHAO* PLEAS

TO MITIGATE IMMIGRATION CONSEQUENCES 1 (May 2021) (plea bargaining on charges helps to "widen[] the pool of available immigration-safe plea alternatives"), https://defensenet.org/wp-content/uploads/2022/06/WDAIP-Using-Barr-Zhao-Pleas-to-Mitigate-Immigration-Consequences-June_2022.pdf [https://perma.cc/FW9M-WFTZ].

Two protections are essential to this flexible pleading framework: first, the amended charges may be fictitious only if the plea is knowing and voluntary, and second, a factual basis for the original charge provides a sufficient "factual basis for the plea as a whole." *Zhao*, 157 Wn.2d at 200. Our approach accords with U.S. Supreme Court precedent recognizing the boundaries on plea bargaining, while preserving a defendant's ability to negotiate if these essential prerequisites are met. *See North Carolina v. Alford*, 400 U.S. 25, 36, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) ("[T]he Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence."). For a plea to be informed, there must be a factual basis for the original charge, and the defendant must understand the relationship of their conduct to that charge. *Barr*, 102 Wn.2d at 270.

Bin-Bellah pleaded guilty to three counts of fourth degree assault and one count of second degree assault. These four counts stemmed from the initial charge that Bin-Bellah committed first degree assault on his mother. His plea agreement

includes a promise by Bin-Bellah not to collaterally attack any part of his conviction as well as the stipulation that "*all counts are separate and distinct acts.*" Br. of Pet'r, App. at 25, 42 (Wash. Ct. App. No. 83711-7-I (2024)) (italics in original) (boldface and underlining omitted). Bin-Bellah does not challenge that his plea and stipulations were voluntary and informed and so he raises what amounts to a factual sufficiency challenge. The Court of Appeals focused on Bin-Bellah's underlying assaultive conduct after accepting his premise that as a matter of law, he cannot be convicted of more than one assault. By accepting Bin-Bellah's invitation to look past his stipulation, the court decided that each count of assault did not have a sufficiently independent factual basis. In doing so, the Court of Appeals ignored the trial court's finding that the plea was entered knowingly, voluntarily, and with the requisite factual basis under *Barr* and *Zhao*. Guilty Plea Hr'g at 11-12, 25-26.

Division One's resolution of Bin-Bellah's case stands in tension with other Court of Appeals decisions applying *Barr* and *Zhao*. Division Two has previously permitted a defendant to plead guilty to two counts of third degree assault when only one count of second degree assault was initially charged and there was a factual basis for only one assault charge, rendering the additional, lesser charge duplicative. *State v. Tamau*, noted at 150 Wn. App. 1030, 2009 WL 1526944, at *2 (2009) ("[Tamau] chose to plead guilty in order to obtain the benefit he had bargained for."). Division Two has also allowed the State to dismiss 22 offenses in exchange for the defendant

11

pleading guilty to one fictitious greater charge. *State v. Wilson*, 16 Wn. App. 2d 537, 545, 481 P.3d 614 (2021).

> *B. Bin-Bellah Improperly Engages in a Factual Sufficiency Analysis of the Fourth Degree Assault Charges to Which He Pleaded Guilty*

To anchor his challenge, Bin-Bellah argues that the legislature has prohibited any attempt to divide one assault into several lesser assaults for plea bargaining purposes. This argument is premised on the notion that the legislature has designated assault as a course of conduct offense. Corrected Suppl. Br. of Resp't at 10-11 (asserting that a plea to multiple charges would allow the prosecution to divide one instance of criminal conduct "into smaller units than the legislature has designated"). It relies on a misunderstanding of our decision in *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 329 P.3d 78 (2014).

Contrary to Bin-Bellah's argument, our decision in *Villanueva-Gonzalez* does not hold that a person charged with one act of assault is prohibited from agreeing to separate and distinct acts as part of a plea deal. Rather than viewing the assault statutes as requiring a single course of conduct analysis, we expressly left open the possibility that multiple separate acts *could* constitute distinct assaultive acts for the purpose of criminal prosecution. *Id.* at 985 ("There is no bright-line rule for when multiple assaultive acts constitute one course of conduct."). We endorsed a fact-

intensive, multifactor analysis and emphasized that the ultimate determination in a particular case "should depend on the totality of the circumstances, not a mechanical balancing of the factors." *Id.*

We recently reaffirmed and applied this principle in *State v. Lee*, holding that "if each count arises from a separate and distinct act, multiple convictions may stand" and affirming that in reviewing whether a defendant's actions constitute a single course of assaultive conduct, "[t]he ultimate determination depends on the totality of the circumstances, not a mechanical balancing of the [*Villanueva-Gonzalez*] factors." 5 Wn.3d 734, 742, 746, 582 P.3d 271 (2026). In another recent opinion, *Ray*, we reaffirmed that a challenge to multiple convictions arising from different statutory provisions demands a distinct analysis under the double jeopardy clause. 5 Wn.3d at 362.

*Villanueva-Gonzalez* does not prevent a defendant from stipulating to the legal fiction that multiple individual acts occurred as part of a plea agreement. Instead, it simply requires the court to examine the totality of the circumstances to determine whether multiple assaults occurred in a particular case. Here, the circumstances include Bin-Bellah's knowing and voluntary decision to enter a guilty plea to multiple charges, as well as his endorsement of the certificate of probable cause, and his factual stipulation "that all counts are separate and distinct acts." Br. of Pet'r, App. at 25 (formatting omitted) (Wash. Ct. App. No. 83711-7-I (2024)).

13

The trial court entered no factual finding that there was a single act of assault. Bin-Bellah asks us to disregard his factual stipulation and enter our own factual findings to dispute the facts agreed to in his plea. We decline to do so because this is the sort of factual dispute that Bin-Bellah "chose not to [assert at trial], and hence relinquished that entitlement." *Broce*, 488 U.S. at 571; *see also In re Pers. Restraint of Schorr*, 191 Wn.2d 315, 324, 422 P.3d 451 (2018) (affirming the principle that a defendant who pleads guilty to separate charges with facial allegations of distinct offenses cannot later reach beyond the record to argue those counts are duplicative).[1]

### C. Bin-Bellah's Factual Stipulations Are Substantive Admissions and Are Entitled to Substantial Weight

Notwithstanding Bin-Bellah's plea stipulating to separate and distinct acts supporting multiple charges, the Court of Appeals accepted his invitation to examine the probable cause statement and concluded that only one assaultive act occurred. *Bin-Bellah*, No. 83711-7-I, slip op. at 7. In doing so, the Court of Appeals improperly disregarded the factual stipulations in Bin-Bellah's plea and instead examined the underlying facts supporting the original first degree assault charge.

---

[1] The State and amicus WAPA make a compelling argument that even if this court did accept Bin-Bellah's argument that a plea can never divide one act of assaultive conduct into multiple counts of assault, the appropriate remedy would be recission of the plea agreement under the doctrine of mutual mistake. However, we need not reach the question of remedies as our holding in *Villanueva-Gonzalez* does not prohibit parties in a negotiated plea agreement from stipulating to multiple separate and distinct acts of assaultive conduct. Bin-Bellah did that here.

From the conclusion that multiple acts were not factually supported, the court held that Bin-Bellah's conviction on multiple charges violated double jeopardy, and it vacated the three fourth degree assault convictions. *Id.* at 7-8.

Urging us to affirm, Bin-Bellah argues that a double jeopardy violation is apparent from the record and cannot be waived. He relies primarily on three cases, all of which are distinguishable. First, Bin-Bellah cites the U.S. Supreme Court decision in *Broce* to show that the purported double jeopardy violation in this case is "apparent from the record" and thus, he has not waived it. Corrected Suppl. Br. of Resp't at 17. Second, he cites our decision in *State v. Knight*, 162 Wn.2d 806, 174 P.3d 1167 (2008), arguing that a mere guilty plea does not waive double jeopardy protections if the terms of the agreement do not explicitly require such a waiver. Finally, he relies on the Court of Appeals decision in *State v. Robinson*, 8 Wn. App. 2d 629, 439 P.3d 710 (2019), to conclude that a defendant can never plead to, and be convicted of, two separate crimes based on one criminal act. None of these cases support Bin-Bellah's double jeopardy argument.

First, the facts of *Broce* are distinguishable, undermining Bin-Bellah's reading of the phrase "on the record." In *Broce*, several defendants were charged with two conspiracies related to a scheme to rig bids on highway projects. They subsequently pleaded guilty to the two conspiracies and "acknowledged in plea agreements that they were subject to separate sentences on each conspiracy charged." *Broce*, 488

U.S. at 565. Later, a court in a separate criminal case related to a third highway project found that each of these three instances were in fact part of a single, overarching conspiracy. *Id.* at 567. Based on this decision, the *Broce* defendants sought to vacate their conspiracy sentences on double jeopardy grounds. *Id.* The U.S. Supreme Court rejected their argument, concluding, "Just as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate crimes." *Id.* at 570. If defendants believed otherwise, the Court reasoned, they had the opportunity to assert as much in a "trial-type proceeding" but "chose not to, and hence relinquished that entitlement." *Id* at 571.

As Bin-Bellah points out, the Court did carve out an exception to the rule that a plea generally "foreclose[s] . . . collateral attack" if, "on the face of the record[,] the court had no power to enter the conviction or impose the sentence." *Id.* at 569. The Court cautioned, however, that a guilty plea is more than a mere statement that the accused engaged in the specific acts described in an indictment, it is an admission that the accused is "guilt[y] of a substantive crime." *Id.* at 570. The Court emphasized that guilty pleas and the stipulations contained within them carry more than just descriptive weight. Rather, they are substantive factual and legal admissions.

16

Both Bin-Bellah and the Court of Appeals erroneously focus on Bin-Bellah's conduct leading up to his arrest, as set forth in the probable cause statement. In doing so, they fail to give weight to Bin-Bellah's factual admission that each count to which he pleaded guilty was supported by separate and distinct acts. By stipulating to these facts, Bin-Bellah waived his right to contest them, as knowing and voluntary factual admissions inherent in a guilty plea cannot later be undermined on appeal. *See id.* at 576 (noting that defendants "cannot prove their claim without contradicting those indictments, and that opportunity is foreclosed by the admissions inherent in their guilty pleas"). By arguing that his actions do in fact constitute one act of assaultive conduct, Bin-Bellah engages in the very factual dispute that he "chose not to [assert at trial], and hence relinquished that entitlement." *Id.* at 571; *cf. Schorr*, 191 Wn.2d at 325 (holding that a defendant "must plead guilty to all or nothing").

Much of Bin-Bellah's reliance on *Broce* hinges on his argument that it is apparent from the face of the record that he was punished four times for one continuous course of assaultive conduct. He contends that his claims are confined to the record, distinguishing his argument from that of the *Broce* defendants who clearly reached outside the record for extraneous facts from another trial. However, *Broce* does not require courts to disregard factual stipulations—they too are a part of the record we must consider. Bin-Bellah's argument relies on selectively

17

excluding a critical component of the record in his case—his own admission to separate and distinct acts supporting his plea.

Second, Bin-Bellah relies heavily on our decision in *Knight*, 162 Wn.2d 806. Building on his *Broce* analysis, he argues that *Knight* holds that a guilty plea on its own does not waive the constitutional protections of the double jeopardy clause so long as the violation is apparent from the record. Bin Bellah asserts that "[m]erely by pleading guilty, [he] did not waive double jeopardy protection." Corrected Suppl. Br. of Resp't at 14. His statement of the law is correct, but his argument that it applies to the circumstances of his plea agreement is unconvincing. His plea expressly encompassed a factual stipulation to four counts premised on separate and distinct acts. His case is therefore distinguishable from *Knight* for two key reasons.

First, in *Knight*, we accepted and did not examine the Court of Appeals' double jeopardy finding and granted review only to determine the appropriate remedy for a double jeopardy violation. Ord. Granting Rev., No. 79236-4 (Wash. July 10, 2007). Our limited holding was that a single conviction can be vacated without rejecting an entire indivisible plea agreement. *Knight*, 162 Wn.2d at 810-12 ("[T]he Court of Appeals found a double jeopardy violation here, and the court must provide a remedy. The proper remedy for double jeopardy violations, including the one here, is vacating the offending convictions."). Here, the procedural posture is different: we do not assume a double jeopardy violation and, as noted

18

above, we need not reach the question of remedies. Thus, *Knight* is not particularly helpful here.

Second, the underlying facts in *Knight* are quite different. Alyssa Knight was initially charged with two counts of conspiracy though there was, in fact, one conspiracy. *Id.* at 811. As a result, there was no factual basis for one of the conspiracy charges, rendering the original charges deficient. In contrast, here, the trial court found a factual basis for Bin-Bellah's original first degree assault charge. This finding provided a sufficient factual basis for the plea agreement under which Bin-Bellah voluntarily and knowingly agreed to dismissal of the original charge in exchange for multiple lesser assault charges based on separate and distinct acts of assault.

Finally, Bin-Bellah's reliance on Division One's opinion in *Robinson* is unavailing because he fails to account for its procedural and factual dissimilarities. In Bin-Bellah's view, *Robinson* categorically holds that a defendant cannot be convicted of two separate crimes based on one criminal act and one original charge. However, in *Robinson*, the court was tasked with examining the validity of a factually fictitious predicate conviction in a subsequent felony proceeding. 8 Wn. App. 2d at 631 ("In a prosecution where predicate convictions are an essential element of the crime, the State is required to prove the previous convictions are valid and constitutional beyond a reasonable doubt."). The procedural posture and

19

associated burden on appeal are decidedly distinct in Bin-Bellah's case, and we find *Robinson* inapposite.

Given this procedural distinction, we need not examine the validity of Division One's substantive double jeopardy analysis to resolve the instant case. We note, however, that unlike Bin-Bellah, the defendant in *Robinson* never provided factual stipulations to separate and distinct acts. *Id.* at 638 ("It is undisputed that Robinson's two 2015 convictions for misdemeanor violation of a no-contact order are based on one act."). The court concluded, "When a person is charged with multiple counts of the same offense, 'each count must be based on a separate and distinct criminal act.'" *Id.* (quoting *State v. Mutch*, 171 Wn.2d 646, 662, 254 P.3d 803 (2011)). Bin-Bellah's plea met that requirement when he expressly stipulated to separate and distinct criminal acts as part of his plea agreement. *Barr*, *Zhao*, and *Villanueva-Gonzalez* permit him to do so, and we do not read *Robinson* as imposing any additional impediment that is not satisfied here. Division One misapplied *Robinson* to this case and erroneously concluded that Bin-Bellah was punished multiple times for a single act. To the contrary, he received the sentence he negotiated for, stipulating to multiple assaults in exchange for four lesser charges and a shorter recommended prison sentence. Bin-Bellah's factual stipulations and the procedural posture render the holding in *Robinson* inapplicable here.

As explained, Bin-Bellah's plea to multiple lesser charges is authorized under *Barr* and *Zhao*. Considering his factual stipulations and admissions of guilt, the plea does not violate Bin-Bellah's rights under the double jeopardy clause.

CONCLUSION

The flexible plea bargaining framework we recognized in *Barr* and *Zhao* makes it possible for a defendant charged with a single assault to enter a plea to multiple, lesser assaults based on separate and distinct conduct. They can do so if the plea is voluntary and knowing, and there is a factual basis for the original charge. Those conditions are met here, and we hold that Bin-Bellah cannot now challenge his plea by pointing to facts in the probable cause statement that undermine the bargain.

We reverse the Court of Appeals, reinstate Bin-Bellah's three fourth degree assault convictions, and dismiss his personal restraint petition.

Stephens, C.J.

WE CONCUR:

Johnson, J.

Whitener, J.

González, J.

Mungia, J.

Madsen, J.P.T.

Yu, J.P.T.

22

No. 103569-1

GORDON McCLOUD, J. (concurring)—The majority's summary of our controlling precedent is accurate. We have held that a criminal defendant can plead guilty to amended charges that lack a factual basis—in other words, a criminal defendant can plead guilty to completely fictitious charges. Majority at 9; *State v. Bao Sheng Zhao*, 157 Wn.2d 188, 200, 137 P.3d 835 (2006). We have held that the fictitious charges do not need to be supported by the facts—and indeed the fictitious charges were not supported by the facts alleged in this case. *In re Pers. Restraint of Barr*, 102 Wn.2d 265, 269-70, 684 P.2d 712 (1984). The United States Supreme Court has held that a guilty plea waives certain double jeopardy challenges, and the majority is probably correct that under that precedent, the double jeopardy challenge in this case was waived. Majority at 15-17. The fact that Akeel Bin-Bellah did not admit that he actually committed the made-up charges is not a problem either: a defendant can plead guilty to take advantage of a plea bargain even if the defendant asserts innocence. *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

That's exactly what happened in this case. The parties made up a story about what happened. They formalized the story with a plea agreement document. They recited the fiction on the record in open court. They did not even pretend that the story was real. The defendant did not admit that he actually committed the made-up crimes. The prosecutor did not provide facts that would have supported the made-up crimes. Based on our controlling precedent, the parties just made the crimes fit the punishment that was appropriate for this tragic case.

And because it was all based on controlling precedent, I must concur.

I cannot, however, join the portion of the opinion that recites the positive criminal justice values that this arrangement supposedly serves. The majority lists those positive values as flexibility, criminal defendants' autonomy, and protecting the integrity of a system based on plea bargaining. Majority at 8-9. And I certainly acknowledge that ignoring reality makes room for a lot of flexibility. But ignoring reality does not really serve the value of criminal defendants' autonomy, given the fact that the State wields so much more power than the typical criminal defendant.

And ignoring reality certainly does not uphold the integrity of the criminal justice system. In fact, the practices that promote the integrity of the

criminal justice system are just the opposite: Transparency. *See Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 505-510, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984) (detailing the important value of keeping courtrooms open). Openness. *Id*. Clarity. *Johnson v. United States*, 576 U.S. 591, 595-96, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015) (importance of clarity in statutes fixing sentences). Predictability. *United States v. Booker*, 543 U.S. 220, 255, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005) (noting importance of predictability in sentencing laws).

Fictitious pleas based on made-up stories with no factual basis do not promote any of these values. They lack transparency. They undermine open, clear, and predictable outcomes in the criminal justice system. They might well promote a just resolution in an individual case (like this one). But they make the criminal court proceeding impossible for the observer to understand, hard to track, and difficult to explain.

To be sure, parties pursue these made-up pleas to obtain a sentence that they believe fits the real crime, given the full context of the situation— and to ensure that the judge will impose that agreed-upon sentence. But there are ways to achieve that goal without all the fictions. In federal court, for example, a court rule provides that if the judge accepts a plea agreement

containing an agreed sentence, then the judge must impose that agreed sentence. *E.g.*, Fed. R. Crim. P. 11(c)(1)(C).

For these reasons, I cannot agree with the majority's view of the criminal justice values that fictitious pleas, with no factual basis and in which the defendant need not admit guilt, supposedly serve. I therefore respectfully concur.

Gordon McCloud, J.

Montoya-Lewis, J.